Futscher v. City of Rulo.

---

JOHN FUTSCHER ET AL., APPELLEES, V. CITY OF RULO
ET AL., APPELLANTS.

FILED JANUARY 26, 1922. No. 22371.

1. **Municipal Corporations:** ASSESSMENTS: POWER TO LEVY: CONSTRUCTION. The power delegated to a city to construct local improvements and levy special assessments for the payment thereof is to be strictly construed against the city, and every reasonable doubt as to the extent or limitation of such power is resolved against the city.

2. ———: EXPENDITURES FOR WATER-WORKS: CONSTRUCTION OF STATUTE. *Held*, that section 5119, Rev. St. 1913, granting power to a city of the second class to make expenditures in the acquisition of a water-works system, by reason of the peculiar terms of the statute and by reason of the apparent underlying spirit of the act, leaves uncertain the matter of limitation of expenditures to

be paid by levy of special assessments, and that such doubt is resolved against the city and in favor of the taxpayer.

3. ———: ———: INJUNCTION. Where, under such statute, substantially all the property in the city has been included in one taxing district under a plan to construct a standpipe and water-mains and hydrants, and pay for the same through special assessments, at such cost as to bring the expenditures for the entire water system beyond an amount equal to 20 per cent. of the taxable property in the city, *held*, that the city, in so doing, exceeded the lawful limitation of taxation fixed by the statute, and that its action may be enjoined at the instance of the taxpayers.

4. ———: SPECIAL ASSESSMENTS: CONSTITUTIONAL LIMITATIONS. Special assessments may equal, but must not exceed, the benefit to the property taxed. The excess in the cost of a local improvement beyond the actual benefits which the property assessed receives cannot be charged against that property without taking from the owner a portion of his property without due process of law and without just compensation.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*John Wiltse,* for appellants.

*Frank A. Hebenstreit* and *J. E. Leyda, contra.*

Heard before MORRISSEY, C. J., ALDRICH and FLANS-PURG, JJ., HOSTETLER and MORNING, District Judges.

FLANSBURG, J.

This was an action to enjoin the city of Rulo from entering into a contract for the purchase and installation of water-mains, fire hydrants and a standpipe, and from levying the cost thereof as a special assessment against the property in the district claimed to be especially benefited by such improvement. The trial court granted a permanent injunction, and the defendant has appealed.

The defendant city of Rulo is a city of the second class, and its authority to act in the matter involved is based upon certain provisions of section 5119, Rev. St. 1913.

This section of the statute was amended in 1917 (Laws 1917, ch. 103) and also in 1919, at the latter time by three separate and distinct acts, bearing no reference to one another (Laws 1919, chs. 46, 48, 52). It has been decided that chapter 46, Laws 1919, has superseded the other amendatory acts and is now the statute which is in effect. *Morgan v. City of Falls City,* 103 Neb. 795.

The section referred to covers several pages of the statute, and there are embodied therein, in an incoherent and strangely disarranged fashion, matters having to do with the taking over and control of private water-works systems; the construction and acquisition of water-works by the city, both for fire protection and for the use of water consumers; the publication of notices to bidders and the letting of contracts; the matter of borrowing money and issuing bonds and of meeting their payment through a general tax; the matter of charging the cost of construction of portions of the plant by special assessment to property benefited; the matter of holding elections by the voters to authorize the issuance of bonds; the matter of the extraterritorial power of the city to do certain acts incidental to the establishment and operation of a water system; the matter of fixing rates and charges for the use of water; the mattter of collecting and applying all income from rents and profits arising from the operation of such plants; and the matter of providing a water commissioner, defining his duties and salary, and fixing the method of his appointment and removal.

The provisions particularly involved here give the city the power by ordinance, "to provide for the purchase of steam engines or fire-extinguishing apparatus and for a supply of water for the purpose of fire protection and public use and for the use of the inhabitants of such cities and villages by the purchase, erection or construction of a system of water-works, water-mains or extension of any system of water-works now

or hereafter established or situated in whole or in part within such city or village," and, when authorized by a vote of the electors, to "borrow money or issue bonds for the purpose not exceeding twenty per cent. of the assessed value of the taxable property within said city or village according to the last preceding assessment thereof, for the purchase of steam engines or fire-extinguishing apparatus, and for the purchase, erection or construction and maintenance of such *water-works, mains, portion* or extension *of any system of water-works* or water supply," and to "levy and collect a general tax in the same manner as other municipal taxes may be levied and collected, to an amount sufficient to pay the interest and principal of said bonds heretofore or hereafter issued as the same mature, on all the property within such city or village as shown and valued upon the assessment rolls," and further provides that, "the expense of erecting, locating and constructing *reservoir* and *hydrants* for the purpose of *fire protection,* and the expense of constructing and laying *water-mains, pipes* or such parts thereof as may be just and lawful, may be assessed upon and collected from the property and real estate especially benefited thereby, if any, in such manner as may be provided for the making of special assessments for other public improvements in such cities, towns and villages." And by section 5120, it is further provided that such cities "owning their own system of water-works are hereby authorized and empowered to borrow money or issue bonds, not exceeding five *per centum* of the assessed value of the taxable property within said city or incorporated village according to the last preceding assessment, *in addition to the amount of indebtedness now authorized by law for water purposes,* for the purpose of extending, enlarging or improving its system of water-works as the needs of said city or incorporated village or its inhabitants may require; and levy and collect a general tax  *  *  *  in the same manner as other municipal taxes may be levied and col-

lected, to an amount sufficient to pay the interest and principal of said bonds as the same mature."

A special election was held in the city of Rulo, and by vote of the electors the city was authorized to expend not to exceed $13,000 for the purpose of constructing a water system, *exclusive of water-mains, hydrants,* and a *standpipe.* The assessed valuation of all the property in the city of Rulo was approximately $67,000, and the $13,000 authorized expenditure was, therefore, nearly 20 per cent. of such total assessed value. Upon receiving this authority from the electors, the city council proceeded to let a contract for the construction of pumps, buildings, filter-plants and other water-plant appurtenances, the cost of which, by the contract, was to be $11,995. This left the matter of a standpipe and water-mains entirely unprovided for. The city council, then, by unanimous vote, in order to provide for those portions which had been omitted, and which were essential to a complete water-works system, passed a resolution describing the entire city of Rulo as a special assessment district, setting forth a plan for the erection of a standpipe and the construction of water-mains and hydrants throughout the city, the estimated cost of all of which was $30,033.86, and which cost was proposed to be assessed against the property in the city, according to benefits. By the two methods, then, of general taxation and special assessment, the city proposed to expend some $42,000 for the construction of a water-plant, mains and reservoir, which is approximately 60 per cent. of the total assessed value of the taxable property in the city, when, if the city had pursued the one method alone of paying for the identical properties by general taxation, its expenditures would unquestionably have been limited to 20 per cent. of such assessed value.

By the provisions of the statute referred to the city is given authority to construct an entire water system, including pumps, reservoir and mains, and to pay for the same by general taxation. It is limited in that

authority to the extent that it may issue bonds to the amount of 20 per cent. of the taxable property in the city, and provide for the payment of these bonds through the assessment of a general tax.. Counsel for the defendant contends that, though the city would be limited in its expenditures, should it undertake to proceed to establish an entire water system, including the plant and the mains, and pay for the same by general taxation, still the city has the right to build part of the plant and pay for the same by general taxation to the full limit of expenditures mentioned, and may then supplement the plant by providing a reservoir, mains and hydrants, to be paid for by special assessment, without regard to any limit of expenditures, and even though the tax should be confiscatory.

The pumps, standpipe, filter-plants and station are, in their nature, improvements of a general public character, conferring a like benefit over the city generally, and are only to a small degree, except, perhaps, under special circumstances, improvements of a local character which would confer special benefits upon any particular property in the city. The legislature could, had it seen fit, have provided that those particular portions of the water system should be constructed and paid for by general taxation, and could have provided a limit to the expenditures to be made for that purpose; and the legislature could have provided that the water-mains and such portions of the plant, which are constructed throughout the city and are strictly in the nature of local improvements, conferring special benefits upon one property or another, as might happen to be adjacent to such improvement, should be paid for by special assessments, without limitation as to the amount of such special assessments, except that they should not exceed in amount the value of the benefits conferred upon the property taxed. The provisions of the statute do not so segregate those two classes of property improvements. The provision for raising funds to provide a water sys-

tem by general taxation is not confined to the purchase
and establishment of such portions of the plant only as
are of general public benefit, but is so comprehensive as to
allow the water-mains and the entire water system to
be constructed and paid for by general taxation. On
the other hand, the provision for special assessments is
not confined to raising funds for the construction of
those portions of the plant only—such as mains, pipes
and hydrants—which are in their nature strictly local
improvements, and which confer special benefits upon
those particular properties in the immediate vicinity
of those improvements, but the provision for special as-
sessments also covers the construction of a reservoir
which, like the pumping plant, is under ordinary circum-
stances of general public benefit to all property in the
city, rather than of special benefit to certain particular
properties. The two methods, then, of providing the
water system, either by general tax or by special as-
sessment, are not divided by the statute so that those
portions of the plant, which are of a general public
nature, shall be borne by general taxation, and those
portions, which are of a local nature and confer special
benefits, shall be borne by special assessment. In order to
construct a reservoir and pay for the same by special
assessment, the city has therefore found it necessary
to include the entire property in the city in one dis-
trict, so as to be able to distribute the tax generally over
all the property in the city.

The distinction in principle underlying the levy of a
general tax and the levy of special assessments is lost
sight of when the improvement proposed is of such a
character and of such general benefit to the entire city
that all the property in the city must be included with-
in a single taxation district, so as to make it possible
that the special assessment may be made. *Village of
Morgan Park v. Wiswall*, 155 Ill. 262; *Pomroy v. Board
of Public Water-Works,* 55 Colo. 476; *Hughes v. City of
Momence,* 164 Ill. 16; *O'Neil v. People,* 166 Ill. 561;

*Village of Grand Ridge v. Hayes,* 271 Ill. 431; *City of Springfield v. Springfield Consolidated R. Co.,* 296 Ill. 17; 28 Cyc. 1115.

If the legislature intended to prohibit the city from exceeding an expenditure equaling 20 per cent. of the taxable property in the city in the construction of hydrants, water-mains and a reservoir, when the cost was to be paid by general taxation, then, certainly, especially in view of the uncertainty found in the statute, it logically follows that the legislature may also have intended to prohibit any expenditure beyond that limit, when the cost of such improvements was to be paid by special assessment. In either event, it is the same character of public improvements to be constructed and the same property owners who are to be compelled to pay the tax. The purpose of the statute was to protect the taxpayer against excessive expenditure in the purchase by the city of a water system, and to preserve his property from a burden greater than 20 per cent. of its assessed value. It makes little difference to him whether the tax which he is called upon to pay is a general tax or a special assessment. The obvious purpose of the statute, to the end of giving him protection, would be thwarted by a holding that the city authorities might, by special assessment covering the entire property in the city, do what they were clearly prohibited from doing by a general tax. *Birdseye v. Village of Clyde,* 61 Ohio St. 27.

The power to construct and even to enlarge a water-works system already constructed is, by the statute, very carefully safeguarded, when the cost is to be paid by general taxation, both by limit of expenditure and by a requirement that authority be first given by the electors at a special election, held for the purpose, and it is reasonable to assume that the legislature did not intend that those safeguards should be rendered nugatory by vesting the absolute power in the city council to purchase the same improvements and incur expenditures

beyond the given limit when it proposed to pay the cost thereof by levy of special assessments.

We recognize the rule that ordinarily a limitation upon the authority to levy a general tax does not limit nor concern the matter of taxing by special assessments, since, as we have said, taxation for local improvements is and must be limited to the value of the benefits conferred upon the property taxed. *Wickliffe v. City of Greenville,* 170 Ky. 528. But in practical operation such limitation as to special assessments, unless the property owner is alert to make objection, does not always protect him. It is, therefore, entirely feasible and the legislatures sometimes do fix a definite limit, aside from the limitations as to the value of the benefits, and make provision that special assessments shall not exceed, in any case, a certain proportionate value of the property. In this particular statute, the matter of acquiring a water-works system and the matter of limitation of expenditures, as well as the provisions for general taxation and special assessments, are so embodied in the same section of the statute as to give rise to some uncertainty and leave in doubt the real intention of the legislature. There is no specific provision that special assessments shall be in accordance with and not to exceed the benefits, but the wording is that so much of the expense "as may be just and lawful" may be levied against the property benefited. That is a phrase of ambiguous meaning, in view of the previous evident intention to make a limitation of expenditures in the acquisition of a water-works system. Throughout the statute there is apparent an idea, on the part of the legislature, that expenditures for the purpose of the acquisition of a water-works system shall be limited and the property owner safeguarded. Even an expenditure for extensions equaling 5 per cent. of the assessed value of the property is not allowed to be incurred, under section 5120, Rev. St. 1913, except by consent of the electors by vote at special election, and it is declared

that the tax to cover that expenditure may be "in addition to the amount of indebtedness now authorized by law for water purposes."

It must be remembered in this connection that, when the city creates an improvement district and contracts for the construction of water-mains and a standpipe, it becomes primarily liable upon those contracts, the contracts become an obligation and result in an indebtedness of the city, even though the plan adopted is to levy special assessments in order to raise the funds to pay such indebtedness. *Moss v. City of Fairbury,* 66 Neb. 671.

It may be further pointed out that the statute does not affirmatively declare that district water bonds shall not be issued when the plan of procedure is by special assessment. If it is necessary and proper to provide for the issuance of bonds to cover a $13,000 expenditure, to be paid for by general taxation, it would seem as necessary to authorize the issuance of special assessment bonds to provide for an expenditure of $30,000, which is to be met by special assessment. When the right is given to a municipality to provide expensive public improvements, the right to borrow money and issue bonds, when found necessary to carry out the purposes of the statute, has been held to have been impliedly granted. *State v. Babcock,* 25 Neb. 278; *State v. Babcock,* 22 Neb. 614.

In fact, one of the methods of meeting the cost of "other public improvements"—paving and repaving—in cities of this class is by the issuance of special assessment bonds. The provision of the statute now under consideration, with regard to the levying of special assessments to cover the cost of water-works, recites that the same procedure shall be followed as is provided for making special assessments for "other public improvements" in such cities. It is to be noted that there is more than one method for making assessments for other public improvements. Assessments for

sidewalks, sewers and parking have a different plan of procedure than that provided for paving and repaving, and the reference in the statute now involved is not specific as to which of the particular methods must be followed. In the case of paving and repaving, district bonds are allowed. If the legislature intended that district bonds might be issued to cover the cost of expenditures, when they were to be paid by special assessment, then it seems inconsistent that it should prohibit bonds from being issued beyond the extent of $13,400, when they were to be paid by general taxation, and should allow bonds to the extent of over $30,000, when they were to be paid by special assessment.

Special assessments may equal, but must not exceed, the benefit to the property taxed. The excess in the cost of a local improvement beyond the actual benefits which the property assessed receives cannot be charged against that property without taking from the owner a portion of his property without due process of law and without just compensation. *Sayles v. Board of Public Works,* 222 Mass. 93. It is difficult to understand, though the record does not set out the facts, how a water system, established in the city of Rulo, would confer benefits to the extent of over 60 per cent. of the assessed value of the property there. Whatever excess in the cost of that plant would exceed the benefits accruing to the property, obviously, could not be charged against the property, but would be an expense which, if one which the city could legally assume, would have to be borne by general taxation. To that extent again the limit on the power of general taxation becomes involved.

The right delegated to a city to construct local improvements and levy special assessments for the payment thereof is strictly construed against the city, and every reasonable doubt as to the grant of power is resolved against such grant. *Missouri, K. & T. R. Co. v. City of Tulsa,* 45 Okla. 382; *Albers v. City of St. Louis,* 268 Mo. 349; 28 Cyc. 1106; *Hutchinson v. City of*

*Omaha,* 52 Neb. 345; *Oshkosh City R. Co. v. Winnebago County,* 89 Wis. 435.

There is a very serious doubt as to whether or not the legislature intended that the city should be limited in its expenditures in the acquisition of a water-works system to an amount not to exceed 20 per cent. of the assessed value of the property in the city, even when it proposed to raise the funds for such expenditures by special assessments, and it is our opinion that the doubt as to that matter should be resolved against the city.

For the reasons given, the judgment of the lower court is

AFFIRMED.