**CITY OF HAMLIN, TEX., et al. v.
BROWN–CRUMMER INV. CO.**

No. 8534.

Circuit Court of Appeals, Fifth Circuit.

Dec. 17, 1937.

Rehearing Denied Jan. 21, 1938.

Dallas Scarborough and W. R. Ely, both of Abilene, Tex., for appellants.

Tom K. Eplen, of Abilene, Tex., and A. B. Huguenin, Thomas E. Elcock, and James G. Martin, all of Wichita, Kan., for appellee.

Before HUTCHESON and HOLMES, Circuit Judges, and STRUM, District Judge.

HUTCHESON, Circuit Judge.

The suit was to establish the validity of, and to recover on, an issue of City of Hamlin waterworks revenue bonds, in the sum of $115,600, and a deed of trust executed to secure the same, March 15, 1929.

The claim was that the bonds were duly and regularly authorized, and issued under authority of law, for extensions to a water system duly and regularly installed in accordance with the contract therefor, and that plaintiffs had purchased them in due and regular course, in good faith and for value, in reliance upon the statements and recitals made in them, without knowledge of any infirmities or defects.

There were several defenses to the suit, but the one mainly relied on was that the debt had been incurred without a vote of the people, in the face of a peremptory statutory prohibition. Stated more in detail, this defense was: That though the statutes of Texas, under which they proposed to be issued, plainly provided that no light, water, or sewer system should ever be incumbered for any sum in excess of $5,000 until such incumbrance had been duly authorized by a majority vote of the qualified voters of such city or town, except for purchase money, for extensions or for refunding, the indebtedness evidenced by the bonds and mortgage in suit was not for extensions, but for improvements, they had therefore been issued and executed without authority from the voters, and were void and without effect.

Other defenses were: That if the bonds and mortgage were issued for extensions, they would still be void, because the amending act which authorized incumbrances without a vote did not, as required by the Texas Constitution, art. 3, § 35, disclose this purpose in its caption; that the bonds constituted a debt of the city within the constitutional prohibition against incurring debts without first making provision therefor, Const. art. 11, § 5; that the mortgage deed of trust was invalid, because contrary to the Constitution of Texas, art. 11, § 9; it provided for subjecting the city's waterworks to forced sale.

The District Judge, of the opinion that the construction and equipment for which the bonds were issued constituted "extensions" within the meaning of the applicable statute, that they were validly issued without a vote, and that plaintiffs' other contentions were no better taken, overruled them all.

Appellants prosecute this appeal, urging primarily that the bonds were issued not for extensions, but for improvements, and secondarily, the other three points they urged below, that the caption of the act was insufficient, that the bonds were

for a debt incurred without compliance with the constitutional provisions, and that the city's water system was not subject to forced sale.

The facts are without dispute; what is sharply at issue is the inferences to be drawn from, and the law governing, them. So far as material to this appeal, they may be briefly stated thus:

The City of Hamlin, Tex., owned a water supply, a complete distribution system, and all appliances for the operation of such system. The system had been bought and paid for some years before out of tax bonds legally voted by the people. It became inadequate for supplying water to the town and the council, in the early part of 1929, entered into a contract to procure an additional source of supply. This contract provided that the contractor should buy the land for a reservoir, build a dam, and lay a pipe line from the new reservoir to the town, connecting the pipe line with the existing system. It also provided for a pumping station, pumps, a standpipe out on the line, and such equipment as was necessary to the utilizing of the new source of supply. No part of the work was to be done inside the city limits, save and except the connection of the pipe line to the system the city already owned. The District Judge found: "The work to be performed and which was thereafter constructed by the contractor strictly in accordance with the plans and specifications, was as follows:

"One: The purchase of a reservoir site, 45,200 feet from the City of Hamlin.

"Two: 1—earthen dam and spillway on the site purchased.

"Three: 1—intake and pump house at the new dam.

"Four: 1—250 g. p. m. motor driven centrifugal pump;

"Five: 1—elevated steel tank 100,000 gallon capacity on a 100 foot tower situated on the pipe line between the new dam and the city, 37,000 feet from the dam and 8,200 feet from the City of Hamlin;

"Six: 1—8″ pressure regulating valve and control valves 8,200 feet of 6″ cast iron force main and 37,000 feet of 8″ cast iron supply line and such other miscellaneous valves and fittings as are necessary to complete the project.

"When the contract was completed the cast iron line was brought into the City and there connected with the distribution system which the city had before the making of the contract and the issuance of the bonds involved in this suit, it being intended that through the contract the city would make available for the use of its distribution system a new source of water supply. The above described work, as performed by the contractor in accordance with the plans and specifications, constituted the work and all the work that was done in consideration of the issuance of the bonds, involved in this suit, and was the work and all the work described in the contracts, ordinances and other proceedings relating to the issuance of such bonds. The entire proceedings relating to the issuance of the bonds in question were had and done by the City Council without its having been first authorized so to do by a vote of the people of the City of Hamlin, and the question of the issuance of the bonds was never submitted to a vote of the people of said town."

In order to pay the contractor for the proposed new construction, the town council, without a vote of the people, issued revenue bonds in the sum of $110,000 and a deed of trust to secure the payment of the bonds, and as the work progressed delivered the bonds to the contractor on estimates. The deed of trust not only conveyed the new plant and the new source of supply, but also included the system that the city already owned, and pledged all of the revenues from the entire system to pay the bonds. Throughout the ordinances and the bonds the proposed construction was referred to as "improvements and extensions of the waterworks system."

The new dam was built on a gypsum bed which failed with the first rain, with the result that the dam would no longer hold water, and the project failed, with nothing to show for the new system for which the mortgage had been issued, except a small amount of salvage.

The city in its pleadings disclaimed any title to or interest in this salvage, it has been collected up and disposed of under the supervision of the court, and the funds derived from it are now in the registry.

Here appellee, in addition to stoutly maintaining that the District Judge was right in his conclusion that the construction involved in this controversy was "extensions," and not "improvements," and that the bonds were in fact validly issued, insist that since express statutory power existed to issue the bonds without

a vote for the purpose of constructing "extensions," the City of Hamlin, by the recitals in the bonds and in the proceedings leading up to their issuance, has estopped itself to deny their validity and enforceability.

Appellants in reply, pointing to the statute plainly prescribing what could and what could not be done without a vote, and to the recitations in the ordinances and the bonds themselves, not that they were issued "for extensions," but "for improvements and extensions," insist that there are no recitals upon which the estoppel claim could be based, and further, that if the bonds and ordinances had recited that the construction work was "extensions," appellee is charged with knowledge of the statutes under which they take their claim, and with the plain facts as to the work in hand, especially since appellee was the bond trustee in the mortgage, and was as familiar with the facts of the construction as was the contractor himself.

The Texas statutes questioned and to be construed are: R.S.1925, arts. 1111, 1112 and 1113, as amended by chapter 194, p. 276, General and Special Laws of 1927, passed by the Fortieth Legislature:

"Article 1111. All cities and towns operating under this title have power to mortgage and encumber their light systems, water systems, or sewer systems, either, both, or all, and the franchise and income thereof, and everything pertaining thereto, acquired or to be acquired, to secure the payment of funds to purchase same, or to purchase additional water powers, riparian rights, or to build, improve, enlarge, extend or repair such systems, or either, or all of them, and as additional security therefor, by the terms of such encumbrance, may grant to the purchaser under sale or foreclosure thereunder, a franchise to operate the systems and properties so purchased for a term of not over twenty years after such purchase, subject to all laws regulating same then in force. No such obligation shall ever be a debt of such city or town, but solely a charge upon the properties so encumbered and shall never be reckoned in determining the power of such city or town to issue any bonds for any purpose authorized by law."

"Article 1112. No such light, water, or sewer systems shall ever be sold until such sale is authorized by a majority vote of the qualified voters of such city or town; nor shall same be encumbered for more than

five thousand dollars, except for purchase money, or for extensions, or to refund any existing indebtedness, until authorized in like manner. Such vote in either case shall be ascertained at an election, of which notice shall be given in like manner as in cases of the issuance of municipal bonds by such cities and towns."

"Article 1113. Whenever the income of any lighting, water, or sewer systems shall be encumbered under this law, the expense of operation and maintenance, including all salaries, labor, materials, interest, repairs and extensions, necessary to render efficient service, and every proper item of expense shall always be a first lien and charge against such incomes. The rates charged for services furnished by any said system shall be equal and uniform, and no free service shall be allowed except for city public schools, or buildings and institutions operated by such city or town."

Of these articles, 1112 was amended in 1927, to insert in it the words, "or for extensions." It is upon the purported authority of these words that the bonds were issued without a vote.

The caption of that act read:

"Encumbrance of Lighting and Water Systems by Cities and Towns.

"An Act to amend Articles 1111, 1112, and 1113 of the Revised Statutes of Texas, pertaining to the encumbrance of lighting and water systems and income thereof by cities and towns to secure payment of funds for the purchase or improvement thereof, including therein the power to encumber sewer systems and the income thereof for said purposes, and declaring an emergency."

It is upon the failure of the caption to contain any reference to extensions, and the opinion of the Texas Court of Civil Appeals in City of Cross Plains v. Radford, 73 S.W.2d 1093, that appellants base their contention that the act is invalid for want of sufficient caption. It is upon these two points that appellants must stand or fall on this appeal, for their other two points have already been adjudged against them.

■ Appellants concede that the Supreme Court of Texas, in the cases of City of Dayton v. Allred, 123 Tex. 60, 68 S.W. 2d 172, 179, McCann v. Akard, 68 S.W.2d 1033, City of Houston v. Allred, 123 Tex. 334, 71 S.W.2d 251, has held that a transaction such as that involved in this case, is not the incurring of a debt within the

prohibition of the Constitution against incurring debts without first making provision for a tax for their discharge. The effort of their argument is to show that, despite these decisions, the transaction is still prohibited by the Constitution, we agree neither with the argument, nor with the conclusion to which it leads.

■ City of Dayton v. Allred has also, if not directly, at least in principle, decided, as indeed under the statute we think it must have decided, that a power of sale in an incumbrance of a municipal water or sewer system executed in accordance with the applicable statutes, is not invalid under the constitutional provision protecting municipal property from forced sale. The court there held: "It is settled in this state that sales made by trustees under voluntary deeds of trust, or mortgages duly authorized by law, with express power of sale, are not forced sales." Besides, there was no effort in this case to subject the property to forced sale, but only to apply the water revenues to the debt. Until such a power is sought to be exercised, its mere granting in a mortgage securing them, cannot affect otherwise valid bonds.

As to its two other defenses the city stands much better. The defense of want of sufficient caption is precisely supported by the opinion of the Court of Civil Appeals in the Radford Case. It finds support, too, in much that is said and decided in the cases that case cites.

■ We do not however, decide the question here, for we are convinced that the bonds and deed of trust were executed not "for extensions," as that term is used in amended article 1112, but for additional water power and to build, improve, and enlarge the water system, and having been issued without a vote for these purposes, they are invalid and unenforceable. We think this view is compelled by the decision of the Supreme Court of Texas in Radford v. City of Cross Plains, 126 Tex. 153, 86 S. W.2d 204. The District Judge thought the facts of this case were sufficiently different from the facts in that to prevent its being controlling here. We do not think so.

The District Judge points out that the Supreme Court laid great stress upon the fact that the parties had themselves declared that the bonds were issued for "improvements." The parties in this case declared the same thing. Here they were recited as issued for "improvements and extensions" while there the word "extensions" did not appear. This, however, is a distinction without a difference. If a recital that the bonds were issued "for improvements" in the Radford Case negatived the contention that they were issued "for extensions," the same thing would apply here in fullest force. For what was to be done was all set out in the contract without distinction as to what part was improvements and what part was extensions. No sort of guide or test was furnished for making a distinction.

Apart from these recitals, however, as was pointed out in the opinion of the Supreme Court in the Radford Case, "the argument [that what was actually constructed was extensions] leads to the result that improvements as used in the bonds and extensions as used in article 1112 are synonymous. If the Legislature had intended this to be the meaning of these terms, it would not have specifically enumerated the various powers given in article 1111, but would have merely used the one term 'improve,' and would have used the word 'improvements' in article 1112 instead of the word 'extensions.' "

■ We think it plainly appears from all of the articles taken together, that the paramount, overriding purpose of the statutes authorizing construction and improvement of water and sewer systems was to require all bond issues to be first submitted to a vote of the people, except in the cases of (1) purchase money (2) refunding bonds, and (3) expenditures not exceeding $5,000; and that the amendment of 1927 permitting encumbrances "for extensions" without a vote was intended to cover improvements of the limited and narrow kind, included in extensions, and nothing more. This is borne out by the use of the same term in article 1113, in connection with operating expenses. If, as appellee argues here, and as the District Judge thought, the word "extensions" was used in the amendment with a meaning broad enough to cover all kinds of improvements, and not in contradistinction to the words with which it was used in context in article 1111, the amended statute would have carried forward into article 1112 all of the words in article 1111 with which "extensions" was associated. It would not have picked out "extensions" alone. It picked these out because of the constantly recurring necessity of providing for them, as the city extended its service and took on new customers. If the statute is given

this construction, no violence is done to the paramount purpose and intent of the statute to protect water and sewer systems of cities from incumbrances improvidently placed on them by city officials without first submitting the question to a vote of the people. If construed as appellee contends, and as the District Judge found, the people are without protection. For every addition to the facilities, no matter what its nature, is, in a certain sense, an extension to that facility. Thus construed, the amendment has effectively repealed the saving provisions of the statute.

 Nor are we impressed with appellee's claim of, and argument for, estoppel by recitals. In the first place, this argument is defeated by the conclusive fact that the recitals themselves, that they were being issued "for improvments," charged the purchasers with knowledge that the bonds were being issued to do a prohibited thing; to incumber the city's property without first submitting the question to a vote of the people. Just as the recital in the Radford Case, that the bonds were issued "for improvements" prevented the bondholders from claiming that they should be regarded as issued "for extensions," so here the bondholders can rest no claim of estoppel on recitals which advised them that the bonds were issued for the doing of a prohibited thing. No one could tell what part of the work was improvements, and what was extensions, but if that could have been told, this would not save the bonds. For issued "for improvements" without a vote being taken, when the city was prohibited from doing this, the whole bond issue fails, even if a part of the work might be shown to have been "for extensions." In a situation of this kind the equities are not with the bondholders, but with the people of the city, who, having gotten nothing from the bond issue, which they are endeavoring to hold, are simply insisting that the bondholders, who have made, with their officers, agreements prohibited by law, may not impose those unlawful agreements as a burden upon the people.

 We have had recent occasion to draw attention to the underlying wisdom and binding force of the constitutional and statutory policy evidenced by provisions protecting the people of a community from debts incurred without their vote. We have in that case,[1] reaffirmed that the plain requirements of Constitution and statutes for the security of taxpayers against debts incurred without their consent, must be observed, that contracts attempted to be entered into and bonds issued in violation of these provisions are nullities, and may not be recovered on, and that neither will acts done in violation of such prohibitions give rise to an action on quantum meruit. We reaffirm that holding here. We hold that since the city lays no claim to the work constructed by the proceeds of the bonds, but disclaims all interest in it in favor of the bondholders, these have no equity upon which to found a claim against the water system or its revenues.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

Reversed and remanded.

---

*Rehearing denied Feb. 18, 1938.
[1] Cameron County Water Imp. Dist. v. De La Vergne Engine Co., 5 Cir., 93 F.2d 373.