CHARLES B. MATZKE ET AL., APPELLANTS AND CROSS-APPELLEES, JAMES S. WAKE ET AL., INTERVENERS-APPELLANTS AND CROSS-APPELLEES, v. CITY OF SEWARD, NEBRASKA, A MUNICIPAL CORPORATION, ET AL., APPELLEES AND CROSS-APPELLANTS.

226 N. W. 2d 340

Filed February 27, 1975. No. 39537.

Blevens, Bartu, Blevens & Jacobs, for appellants.

Russell A. Souchek, for appellees.

Heard before SPENCER, BOSLAUGH, NEWTON, CLINTON, and BRODKEY, JJ., and COLWELL, District Judge.

COLWELL, District Judge.

Four separate suits were filed by property owner plaintiffs to enjoin the City of Seward, Nebraska, and its officers, defendants, from levying special assessments for improvements made in water extension districts Nos. 13, 15, 16, and 17 created by ordinance No. 895, pursuant to section 19-2402, R. R. S. 1943. Plaintiff Lutheran Church-Missouri Synod, a corporation, owns property in districts Nos. 13 and 15; plaintiff School District of Seward, Seward County, Nebraska, owns property in district No. 17; more than 50 plaintiffs own properties in either districts Nos. 13, 15, or 16; plaintiff Concordia Teachers College of Seward owns property in districts Nos. 13, 15, and 16; and interveners-plaintiffs Wakes own property in district No. 17. The hearing on the equalization of assessments noticed and set for February 27, 1973, was restrained pending trial. The four cases were consolidated for trial, issues joined, and trial had. The trial court granted an injunction as to districts Nos. 15 and 16, and it denied injunction as to districts Nos. 13 and 17. Separate appeals and cross-appeals were perfected to this

court for trial de novo to enjoin defendants from levying special assessments in districts Nos. 13 and 17, and defendants' cross-appeal in districts Nos. 15 and 16 to declare those districts subject to special assessments.

Defendants do not challenge injunction as a proper remedy to be invoked against an invalid or improperly levied special assessment. Futscher v. City of Rulo, 107 Neb. 521, 186 N. W. 536. All parties agree that section 19-2402, R. R. S. 1943, was the statutory authority relied upon by defendant City of Seward in these proceedings.

Seward, now a city of the first class, had a study made in 1966-67 by its consulting engineers, Henningson, Durham & Richardson, Omaha, Nebraska, reported as "A General Development Plan for Seward, Nebraska." The plan covered all areas of interest to the city projected to 1985, including its water system, with recommendations to improve, expand, and increase its water supply, transmission lines, storage, and area served. Population growth was projected from just under 5,000 to 8,500 persons in 1985. Some of the water system recommendations were completed prior to December 1971.

Furthering the plan, the city enacted ordinance No. 895 on December 7, 1971: "An ordinance creating *Water Extension Districts* Numbers 13, 14, 15, 16 and 17 of the City of Seward, Nebraska, defining the boundaries thereof, directing the construction of the extensions of water mains and providing the cost of the extension be assessed against the property in the district to the extent of special benefits. * * * Section 1. *The mayor and council * * * deem it necessary and advisable to extend the municipal water service to territory beyond the existing system as herein provided."* (Emphasis supplied.)

The ordinance, in substance, by separate sections creates water extension districts Nos. 13, 14, 15, 16, and 17. The outer boundary of each district is described by metes and bounds; there is a description of the proposed water main construction as to size and location, but not as to material, and reference is made to the plans

and specifications on file with the city clerk and the estimate of cost. The locations of the water mains to be installed are described. The ordinance also provides for the letting of a contract for the work by bids and the assessment of the cost of the improvements in the districts against the properties therein as specially benefited.

District No. 13 is an irregularly shaped area on the east side of the city containing 98 separate tracts. In this district a new water main was constructed and extended by easement agreement across the athletic practice field of plaintiff Concordia Teachers College of Seward, Nebraska, a corporation. With the exception of this new easement line all tracts in district No. 13 were served by the existing city water system. District No. 14 included all territory and area not previously served by the city water system; the formation of that district and the special assessment levy is not a part of this appeal. District No. 15, containing 51 tracts, and district No. 16, containing 8 tracts, are both generally rectangular in shape located on the east side of the city; all the tracts included in both districts were being served by the city water system at the time. District No. 17 containing 26 tracts is an irregularly shaped area on the north and west side of the city; a part was outside the city limits; a part of the area was previously served by city water service; and a part had not been previously served.

The location and boundaries of the several water extension districts were determined by the city's consulting engineers who also prepared the schedule of benefits and special assessments for the several tracts therein.

A contract was let February 15, 1972, for the water improvements described in ordinance No. 895. Generally, the contract provided for two new water wells, one 750,000 gallon elevated storage tank at the north edge of the city, and the replacement of some water mains and the addition of new water mains with larger capac-

ity. A federal grant of $285,600 was obtained, but no part of these funds were used in payment of work in any of the water extension districts. The total bid cost of the work done for all water transmission mains including those in the water extension districts was $241,814.10. Of this amount $99,587 was for water extension districts Nos. 13, 15, 16, and 17.

The main issue presented is the interpretation of section 19-2402, R. R. S. 1943. Plaintiffs contend the land area that can be included in a water extension district is limited to an area outside of and apart from any area already served by the city water system, and that water extension districts Nos. 13, 15, 16, and 17, and the proposed special assessments against their property therein are void for the reason that they include property already served. Defendants argue that the statute provides authority for the city to provide adequate water facilities for both its existing system and those areas beyond which require service, and that the cost of any improvement so made in the district should be paid by the property owners by special assessment to the extent of the benefit.

"The legislative intent is the cardinal rule in the construction of statutes. * * * All statutes relating to the same subject are considered as parts of homogeneous system and later statutes are considered as supplementary to preceding enactments. So, also, statutes relating to the same subject, although enacted at different times, are in pari materia and should be construed together." Enyeart v. City of Lincoln, 136 Neb. 146, 285 N. W. 314.

"In construing a statute the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately." Rozgall v. Dorrance, 147 Neb. 260, 23 N. W. 2d 85.

"The general rule in this state in construing applicable statutes is that the legislative power and authority delegated to a city to construct local improvements and levy assessments for payment thereof is to be strictly construed and every reasonable doubt as to the extent or limitation of such power and authority is resolved against the city and in favor of the taxpayer." Chicago & N. W. Ry. Co. v. City of Omaha, 156 Neb. 705, 57 N. W. 2d 753. See, also, Futscher v. City of Rulo, *supra*; Manners v. City of Wahoo, 153 Neb. 437, 45 N. W. 2d 113.

We consider the general statutory authority of a city of the first class to establish, construct, extend, enlarge, use, and pay for its water system.

Sections 16-667 to 16-670, R. R. S. 1943, were first enacted in 1901. Section 16-667, R. R. S. 1943, provides: "The city may, by ordinance, lay off the city into suitable *districts* for the *purpose* of *establishing* therein a *system of* * * * *water service;* to provide such systems and regulate the construction, repair, and use of the same; to compel all proper connections therewith and branches from other streets, avenues, and alleys, and from private property; * * *." (Emphasis supplied.) Sections 16-668 to 16-670, R. R. S. 1943, are implementing procedures for construction, payment, special assessments, and the issuance of bonds for "water mains" in a "water district."

Sections 18-401 to 18-411, R. R. S. 1943, were enacted in 1921. Section 18-401, R. R. S. 1943, provides: "In all cities * * * owning or operating a waterworks system * * * and wherein water * * * is supplied by municipal authority for domestic, mechanical, public or other purposes, * * * the authorities having general charge, supervision, and control of all matters pertaining to the said water * * * supplied by any city * * * shall have the power and authority, whenever they deem it proper and necessary so to do, to create a *water main district* * * * either within or without the corporate limits of the political subdivision involved, and to order and cause to be

made *extensions* or *enlargements* of *water mains* * * * *through said district* * * *."  (Emphasis supplied.)

Section 18-403, R. R. S. 1943, requires the city to publish notice of the creation of the water main district, and of the ordering of extension or enlargement of the water main therein; it provides the owners of real estate therein have 30 days to file a written protest.  Section 18-404, R. R. S. 1943, provides:  "If within said thirty days there be filed * * * a written protest signed by the record owners of a majority of the foot frontage of taxable property in such district, then the filing of such protest shall operate as a repeal or rescission of such ordinance * * *."  Section 18-405, R. R. S. 1943, limits the assessments against the real estate in the district to actual cost, "not exceeding the cost of installing a six-inch water main."  This latter limitation was deleted by amendment in 1972.

Sections 19-2402 to 19-2407, R. R. S. 1943, were enacted in 1961 as L.B. 142 providing generally for the creation of sanitary sewer and water extension districts, construction of water extension mains, special assessments, equalization, and revenue and general obligation bonds.  Section 19-2402, R. R. S. 1943, provides:  "Whenever the mayor and council of any city of the first or second class * * * shall deem it necessary and advisable to extend municipal water service * * * *to territory beyond the existing system,* such municipal officials may, by ordinance, create a district or districts to be known as * * * *water extension districts* * * * *for such purposes,* and such district or districts may include properties within the corporate limits of the municipality and one mile beyond the same.  * * *  Said ordinance shall also state the outer boundaries of the district or districts in which it is proposed to make special assessments. When *such extension* of the utility service involved *is completed,* the municipality *shall compel all proper connections therewith* of occupied properties in such utility district, and may provide a penalty for failure to comply

with regulations of the municipality pertaining to such utility districts." (Emphasis supplied.)

The remarks of Senator Ernest H. Staubitz, the introducer of L.B. 142, as taken from the official Legislature history, provide some background as to the purpose and intent of that legislation: "For some time municipal officials generally have recognized the need to extend water works and sanitary sewer systems to new additions. Cities presently have authority to create water and sewer districts, but there is no authority to issue revenue and/or general obligation bonds to provide funds for the cost of system extensions. LB 142 is intended to provide authority for the creation of needed waterworks * * * extensions, together with assessment of benefits, connection fees, water * * * rates and issuance of bonds for the funding of the costs of the extensions. * * * The bill is extended, the purpose accompanying the bill is * * * to provide means for authority for cities to issue bonds where it becomes necessary to create extensions of both water systems and the sanitary sewer systems. Cities that are having an explosion of population have found that it is necessary, of course, to extend the original system and these extensions are called districts, and have to be created and have to be financed."

The critical language of section 19-2402, R. R. S. 1943, is: "Whenever the mayor and city council of any city * * * shall deem it necessary and advisable to *extend* municipal water service * * * to *territory beyond the existing systems,* such municipal officials may, by ordinance, create a *district* or *districts* to be known as * * * *water extension districts.*" (Emphasis supplied.) From The Random House Dictionary, 1966, the following definitions appear: "*Extend*" is to lengthen, or expand. "*Extension*" is the state of being extended. "*Territory*" is any tract of land. "*Beyond*" is farther on, or away, past. See, also, Northwestern Light & Power Co. v. Town of Grundy Center, 220 Iowa 108, 261 N. W. 604; City of Hamlin v. Brown-Crummer Inv. Co., 93 F. 2d 680.

"In the absence of anything to indicate the contrary, words must be given their ordinary meaning." Mook v. City of Lincoln, 146 Neb. 779, 21 N. W. 2d 743.

It was the limited intention and purpose of the Legislature to provide cities of the first and second class and villages with authority to expand and extend their water systems to municipal additions and to other territory away and apart from their existing water service systems in order to meet the demands and needs of growing cities and villages, and to provide them with authority to create districts wherein water mains and service could be provided, special assessments made, and bonds issued for payment of construction. We conclude that a water extension district as described in section 19-2402, R. R. S. 1943, is an area of land or contiguous tracts of land located apart and outside any area served and benefited by an existing municipal water service system, wherein water extension mains are to be constructed and municipal water service is extended.

It is clear that water extension districts Nos. 13, 15, 16, and 17 in ordinance No. 895 do not meet the tests of a water extension district since the land in each district was either partly served, or wholly served, by the Seward city water system at the time the ordinance was adopted.

Although not argued by the parties, there is the question of the legality of the city's acts under any statutory authority. We find none. The work done in all four districts was in the nature of extending and enlarging the existing water system, which would lend itself to applying sections 18-401 to 18-411, R. R. S. 1943; however, the city did not give the notice required in section 18-403, R. R. S. 1943.

The city had no authority in these proceedings to levy special assessments on the several tracts of land owned by plaintiffs and interveners. The prayer of each petition should be granted. The City of Seward is enjoined from levying special assessments pursuant to its

ordinance No. 895 for improvements made to the city water system against any of the respective tracts of land owned by plaintiffs and interveners in water extension districts Nos. 13, 15, 16, or 17.

It is not necessary to consider the other issues presented by the appeals. The costs are charged to defendant, City of Seward.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.

McCOWN, J., participating on briefs.