IN RE GUARDIANSHIP OF RICHARD ANDREW SAIN.
PATRICIA L. ZERBS, APPELLANT, V.
RICHARD H. SAIN, APPELLEE.
319 N.W.2d 100

Filed May 7, 1982. No. 44218.

Steven J. Lustgarten of Lustgarten and Roberts, for appellant.

John B. Ashford of Bradford, Coenen & Ashford, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

The instant appeal presents to the court a case of first impression concerning the adoption statutes of the State of Nebraska, Neb. Rev. Stat. §§ 43-101 to 43-118 (Reissue 1978), and, in particular, §§ 43-104 and 43-105 involving substitute consent.

The appellant, Patricia L. Zerbs, is the natural mother of the child sought to be adopted and the current wife of Stephen T. Zerbs. The appellee, Richard H. Sain, is the former husband of Patricia L. Zerbs and the natural father of the child sought to be adopted.

On July 12, 1974, a decree of dissolution was entered by the District Court for Douglas County, Nebraska, wherein the marriage of Patricia L. Sain and Richard H. Sain was dissolved. The custody of the minor child of the parties was granted to the mother. On March 28, 1976, Patricia L. Sain married Stephen T. Zerbs. Thereafter, on July 6, 1979, the Zerbs filed a petition in the county court of Sarpy County, Nebraska, seeking to adopt the child involved in this action.

The county court of Sarpy County, Nebraska, found that Sain had abandoned his child for more than 6 months and ordered the adoption to proceed. This was appealed to the District Court for Sarpy County, Nebraska, where the District Court held that there was no appealable order. Even though the District Court held that there was no appealable order, it nevertheless proceeded to make findings on review as to what should be done. Specifically, it found that the jurisdiction to litigate the question of abandonment was vested in the county court having jurisdiction of the child's guardian and that two separate proceedings in the county court were required. One proceeding should be held for the ap-

pointment of a guardian on the grounds of abandonment, and a second proceeding to determine whether the adoption should be granted. After rendering this advisory opinion, the District Court then remanded the matter back to the county court with directions to dismiss the petition for adoption.

Mrs. Zerbs then filed a petition in the county court of Sarpy County to have herself appointed guardian of her minor child, on the basis that her former husband had abandoned their minor child for more than 6 months. The county court, after hearing, found that it had exclusive jurisdiction of all matters relating to guardianship; that the natural father had abandoned his minor child; and that his parental rights were terminated or suspended by reason thereof. The county court further found that Mrs. Zerbs was a suitable person to be appointed guardian of her minor child for purposes of adoption.

On appeal to the District Court, the District Court held that the guardianship proceedings required to permit the use of substitute consent must be brought in the juvenile court and not in the county court, even though in 90 of 93 counties it was the same court. The District Court nevertheless held that two separate proceedings had to be held and that, therefore, in Sarpy County the guardianship issue must be heard by the separate juvenile court, which is to appoint an independent guardian. The District Court remanded the matter to the county court with directions to vacate the order appointing the guardian and to dismiss the petition for appointment of a guardian for lack of jurisdiction in the county court.

The principal issue we are asked to address by this appeal is the appropriate procedure to be followed when one seeks permission to obtain substitute consent on the basis that one of the parents has abandoned the child, thereby eliminating the necessity of obtaining the natural parent's written con-

sent to the adoption as required by § 43-104.

One would anticipate that the answer to the question would be relatively simple and that a reading of the statutes would suffice. Unfortunately, such does not appear to be the case, and the court therefore is compelled to attempt to interpret the various statutes which may have application. The conflict, as presented to us, is between the authority of the county court, sitting as a court having jurisdiction over adoption matters, and the authority of the juvenile court, whether it is the county court or the separate juvenile court.

In reaching our conclusion we keep in mind several general principles of statutory construction annunciated by us recently in *PPG Industries Canada Ltd. v. Kreuscher,* 204 Neb. 220, 227-28, 281 N.W.2d 762, 767-68 (1979), where we said in part: "Where the language used in a statute is ambiguous, recourse should be had to the legislative purposes. Wang v. Board of Education, 199 Neb. 564, 260 N.W.2d 475. The reasons for the enactment of a statute and the purposes and objects of an act may be guides in an attempt to give effect to the main intent of lawmakers. State v. Jennings, 195 Neb. 434, 238 N.W.2d 477. To ascertain the intent of the Legislature, we examine the legislative history of the act in question. Norden Laboratories, Inc. v. County Board of Equalization, 189 Neb. 437, 203 N.W.2d 152. The court, in considering the meaning of its statute, should, if possible, discover the legislative intent from the language of the act and give it effect. Pelzer v. City of Bellevue, 198 Neb. 19, 251 N.W.2d 662. Where, because a statute is ambiguous, it is necessary to construe it, the principal objective is to determine the legislative intention. Matzke v. City of Seward, 193 Neb. 211, 226 N.W.2d 340. The legislative intention is to be determined from the general consideration of the whole act with reference to the subject matter to which it applies and the par-

ticular topic under which the language in question is found, and the intent deduced from the whole will prevail over that of a particular part considered separately.''

With these principles in mind, we now examine the applicable statutes.

Section 43-101 generally provides that a minor child may be adopted by an adult person and that an adult husband or wife may adopt a child of the other spouse.

Section 43-104 further provides in part: ''No adoption shall be decreed unless the petition therefor is accompanied by written consents thereto executed by . . . (2) any district court or separate juvenile court in the State of Nebraska having jurisdiction of the custody of a minor child by virtue of divorce proceedings had in any district court or separate juvenile court in the State of Nebraska, *and* (3) both parents, if living; . . . except that consent shall not be required of any parent who shall . . . (b) have abandoned the child for at least six months *next preceding the filing* of the adoption petition.'' (Emphasis supplied.) Section 43-105 then provides: ''If consent is not required of both parents . . . because of the provisions of subdivision (3) of section 43-104, substitute consents *shall be filed* as follows: . . . (3) in all other cases where consent cannot be given as provided in subsection (3) of section 43-104, consent *must be given by the guardian* of such minor child appointed in accordance with sections 38-101 to 38-120, section 43-111.01, or sections 43-201 to 43-227, *which consent shall be authorized by the court having jurisdiction of such guardianship.*'' (Emphasis supplied.)

One thing looms clear from a review of these statutes. A guardian must be appointed for a minor child who has been abandoned by one of his parents, who in turn may execute the necessary consent required by § 43-104. The question then is which court,

the county court or the juvenile court, has jurisdiction in an adoption proceeding. We believe it is the county court and not the juvenile court that has the authority to determine abandonment for the purpose of permitting the use of substitute consent, and that likewise appoints the guardian who thereafter is authorized to execute the consent.

Neb. Rev. Stat. § 24-517 (Reissue 1979) describes the authority of the county court. Specifically, § 24-517 reads in part as follows: "Each county court shall have the following jurisdiction: . . . (8) *Exclusive original* jurisdiction in *all* matters of adoption." (Emphasis supplied.) We believe the language to be fairly clear. If the county court is to have exclusive jurisdiction in all matters of adoption, and substitute consent is an integral part of the adoption, it follows that the county court must be the court to have jurisdiction over the determination of abandonment necessary to justify the appointment of a guardian to grant the consent required by § 43-105. We are not unmindful of the provisions of the juvenile court act, and, in particular, Neb. Rev. Stat. § 43-209(1) (Reissue 1978) which provides that the juvenile court may terminate all parental rights if "[t]he parents have abandoned the child for six months or more immediately prior to the filing of the petition." We do not believe, however, that that section is in conflict with what we now hold. A reading of the entire juvenile code makes it clear that one of the grounds upon which the juvenile court may take custody of a child is a finding that the child has been abandoned or is in need of parental supervision by the state. Once such a petition has been filed and the juvenile court has assumed jurisdiction, it may thereafter, under appropriate conditions, *terminate* the parental rights of the parents and authorize the child be adopted.

In that case, § 43-104(3)(*c*) applies and not § 43-104(3)(*b*). This distinction is made clear when

we again look at § 43-105. That section authorizes the appointment of a guardian in accordance with *either* Neb. Rev. Stat. §§ 38-101 to 38-120 (Reissue 1978) *or* § 43-111.01 or Neb. Rev. Stat. §§ 43-201 to 43-227 (Reissue 1978). The authority to appoint a guardian pursuant to either §§ 38-101 to 38-120 *or* § 43-111.01 lies exclusively with the county court and arises in the ordinary adoption proceedings. On the other hand, the authority to appoint a guardian pursuant to §§ 43-201 to 43-227 lies exclusively with the juvenile court and arises *only* if the juvenile court has, prior to adoption proceedings, acquired jurisdiction over a dependent or neglected child. It is a limited situation and not applicable to the general adoption proceedings originated pursuant to the provisions of §§ 43-101 to 43-118.

Where, as here, the child has not been determined to be either dependent or neglected so as to come within the jurisdiction of the juvenile court, the juvenile court does not acquire any jurisdiction in the case and the matter remains exclusively an adoption matter with the county court's jurisdiction as provided by § 24-517.

We see little purpose, nor can we imagine the Legislature intended, that before substitute consent could be used in an adoption proceeding, every child must be declared to be neglected or dependent so as to give the juvenile court jurisdiction over the child, and that the parental rights of a parent or parents must be terminated before the decree of adoption is entered. This does not seem to be within the scheme of either act or in keeping with the intent of the Legislature. The county court has already acquired jurisdiction of the adoption, and in 90 of the 93 counties is the juvenile court. We see little purpose in suggesting that a separate and distinct proceeding must be filed absent a clear and absolute mandate from the Legislature. The county court, having been granted exclusive original jurisdiction in all

matters involving adoptions, is likewise the proper court to determine whether a parent has abandoned his child so as to permit the use of substitute consent provided for by § 43-105.

A second question raised by this appeal is whether a guardian must be appointed in order for substitute consent to be given, and who should be appointed guardian for the minor child. It appears to us that both the interests of the minor child and the language of §§ 43-104 and 43-105 are such that a finding of abandonment for the purpose of substitute consent should not be made without first appointing a guardian for the minor child, who, if abandonment is found, may then be authorized to sign the consent. In the instant case, the county court appointed the natural mother as guardian for the child. We believe that was in error. The mother is one of the petitioning parties and legally an interested party to the action. The District Court was correct in concluding that the minor child should be represented by an individual who has no direct interest in the outcome of the matter and who can more appropriately represent the minor child and thereafter execute the appropriate consent if the court determines such a consent should be signed. Little purpose would be served if anything less than an independent guardian is appointed.

The guardian appointed for a minor child for whom adoption is being sought by the use of substitute consent pursuant to § 43-105 should be an independent party not directly interested in the outcome of the adoption proceedings. It is clear from a reading of the adoption statutes that something *more* than a ministerial duty of signing a document is contemplated by the statutes requiring the appointment of a guardian. If the empty formality of a signature was all that was sought, the court itself could provide it. But more of the guardian is sought.

The purpose of having a signed consent, executed

either by the natural parent or by one appointed to stand in the parent's stead, is to obtain agreement from the natural parents. The interests of the adopting natural parent who, by reason of the adoption, continues as a parent and the interests of the natural parent whose rights as a parent are terminated by the decree of adoption may not be the same. Where, therefore, the nonadopting parent is absent and cannot protest if he or she chooses, an independent party is critical. The guardian, once appointed, may conclude that the best interests of the child will not be served by signing the consent and can so advise the county court.

The county court, unlike the juvenile court, does not terminate parental rights upon a finding of abandonment, but only authorizes the execution of substitute consent. It is the adoption itself which terminates the parental rights, and until the adoption is granted the parental rights are not terminated.

Even if abandonment is found to exist so as to permit the appointment of a guardian who is authorized to execute a substitute consent, the county court is not required to grant the adoption. Section 43-111.01 specifically provides that if, upon a hearing, the court denies a petition for adoption, the court may take such action as the court deems best for the child. Should the court refuse the adoption, the parental rights of the natural parents would remain intact unless and until a decree of adoption is in fact granted. The effect of a finding of abandonment under the adoption statute does not result in the termination of parental rights, as it does under the juvenile act, and therefore implies that the guardian is intended to protect the interests of the child and not the adopting parents.

It is argued to us that the county court is unable to appoint a guardian in an adoption proceeding because the applicable portions of §§ 38-101 to 38-120 have been repealed and are now found as part of the

Uniform Probate Code, and, in particular, Neb. Rev. Stat. §§ 30-2601 to 30-2616 (Reissue 1979). While, to be sure, it would have been helpful if § 43-105 had been amended when the sections in question were repealed, the failure to do so is not fatal. In repealing the applicable portions of §§ 38-101 to 38-120, the Legislature did leave one pertinent section, to wit, § 38-114, which reads as follows: "Nothing contained in this chapter shall impair or affect the power of any court to appoint guardians to defend the interests of minors impleaded in such court or interested in any matter then pending, nor their power to appoint or allow any person, as next friend for a minor, to commence, prosecute or defend any suit in his behalf."

Section 38-114 remains as the legislative bridge between the reference in § 43-105 and the provisions of §§ 30-2601 to 30-2616 as applicable. An appointment of a guardian pursuant to the applicable provisions of §§ 30-2601 to 30-2616 is an appointment made in accordance with the applicable portions of §§ 38-101 to 38-120, thereby giving the county court jurisdiction of such guardianship.

In view of our opinion in the instant case, one final question needs answering. The question raised is what should be the measure of proof required before a finding of abandonment is made by the county court. While the purposes of finding abandonment by the county court under the adoption statutes are somewhat different than the purposes to be exercised by the juvenile court under the juvenile statutes, the ultimate results are likely to be the same.

For that reason, we believe that all of the arguments which support a requirement that abandonment under the juvenile court must be based upon clear and convincing evidence apply equally to the adoption statutes. See, *Santosky v. Kramer,* 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re Interest of Farmer,* 210 Neb. 500, 315 N.W.2d 454 (1982);

*State v. Souza-Spittler,* 204 Neb. 503, 283 N.W.2d 48 (1979). We therefore hold that abandonment for purposes of permitting substitute consent pursuant to §§ 43-104 and 43-105 must be established by clear and convincing evidence. In view of the fact that these proceedings must be returned to the county court of Sarpy County, Nebraska, for the appointment of a guardian for the minor child and then a hearing on the basis of abandonment, we make no observations as to whether the evidence already adduced is sufficient to establish abandonment by clear and convincing evidence, but leave that initially to the trial court. The matter is remanded to the District Court with directions to remand the proceedings to the county court for the appointment of a guardian of said minor child and a determination as to whether the father has abandoned his child so as to authorize the use of a substitute consent.

REVERSED AND REMANDED
WITH DIRECTIONS.

BOSLAUGH, J., dissenting in part.

I dissent from that part of the opinion of the court which holds that Neb. Rev. Stat. § 43-105 (Reissue 1978) requires the appointment of a guardian to give a substitute consent in this case.

A substitute consent by a guardian is required only where consent is not required of *both* parents, if living, the surviving parent, or the mother of a child born out of wedlock. The statute describes a class of cases in which no parental consent is required.

Since the mother of the child is required to consent to the adoption in this case, it is not a case where consent is not required of *both* parents. The majority opinion construes the statute as if it read "one or both parents."

CLINTON, J., joins in this dissent.