STATE OF NEBRASKA, EX REL. ALVIN BLESSING, V. HORACE M. DAVIS.

FILED NOVEMBER 19, 1902.  No. 12,534.

1. **United States Census Reports: POPULATION OF COUNTY: EVIDENCE.** The United States census reports showing the population of a county, are not conclusive evidence of the facts sought to be established thereby.

2. ———: ———: ———: OTHER EVIDENCE. Other competent evidence may be resorted to for the purpose of determining the number of inhabitants of a county at any given time.

3. **Findings of Referee.** The findings of a referee on questions of fact, have the force and effect of a verdict of a jury and will be confirmed when supported by sufficient evidence.

4. **Evidence.** Evidence in the case at bar examined, and *held* sufficient to support the findings of the referee.

5. **Statute: CONSTITUTIONAL MAJORITY.** Sections 8a and 8b, chapter 26, of the Compiled Statutes of Nebraska, 1901, are unconstitutional and void, because the act by which they were sought to be enacted into law and incorporated in the statutes failed to receive on its final passage in the house of representatives a constitutional majority of the votes of the members of that body.

ORIGINAL action in the nature of quo warranto, to test the right of the respondent to hold the office of clerk of the district court of Valley county. *Judgment for relator.*

*Frank N. Prout, Attorney General, Norris Brown, William B. Rose, Clements Bros., Edwin M. Coffin* and *A. Norman,* for relator.

*Thomas J. Doyle, V. O. Johnson, H. E. Oleson* and *William H. Thompson, contra.*

HOLCOMB, J.

The attorney general has instituted an original action in quo warranto in this court to test the right of the respondent to hold the office of clerk of the district court for Valley county. The relator, Blessing, is the county clerk of said county, and according to the allegations of the

petition, is ex-officio clerk of the district court and entitled to the possession of the office and the emoluments thereof. The action is grounded on the allegation that Valley county has less than 8,000 population, and therefore, under the statute, the clerk of the county is ex-officio clerk of the district court. By the law of this state, the office of clerk of the district court, as an independent office, to be filled by a different officer from that of county clerk, in counties of less than 8,000 inhabitants, is not authorized.

Some of the questions arising in the case have been determined on a demurrer interposed to the petition; a decision thereon being found in *State v. Davis,* 64 Nebr., 499. After the issues were formed the case was referred, with directions to the referee to hear evidence, and report the same with his findings of fact and conclusions of law. The referee's report is adverse to the claims of the respondent and he has filed his exceptions thereto, asking to have the report set aside and for judgment of dismissal of the action. The whole case hinges on the one question of whether Valley county, at the time of election of respondent to the office he claims, on November 7, 1899, had a population of 8,000 or over; and the brief of counsel for respondent in support of his exceptions to the referee's report is confined to an argument as to the sufficiency of the evidence to support the finding of the referee, wherein he found that the population of Valley county was less than 8,000. The evidence bearing on the point, for the most part, is stipulated by the parties, and consists of a showing of the population of the county according to the United States census taken in the years 1890 and 1900; the population by precincts for 1900, and the votes cast therein at the general election for that year; the population of children of school age, as shown by the school census for the years 1899 to 1902 inclusive; and the total number of votes cast at each general election for the years 1888 to 1900, inclusive. The population of the county, as shown by the United States census returns, was in 1890, 7,092 and in 1900, 7,390. The votes cast at the general

election in 1890 were 1,515, and in 1900, 1,793. The school census for the year 1899 was 2,863 and for. the year 1900, 2,834. With data of the character just mentioned, the question is, what is the proper inference to be drawn as to the total population on November 7, 1899? Was it 8,000 or more, or less than that number? While the United States census reports are not conclusive as to the true population in any given territory, they afford very satisfactory evidence of the fact in dispute, and unless overcome by competent evidence of some other character, should, we are satisfied, be accepted as prima-facie evidence of the total population of the territory under consideration. It is insisted that a comparison of the total number of inhabitants, as shown by the census returns of 1890 and 1900, and of the total vote cast at the general elections in those two years, discloses that the census of 1900 is incorrect. We do not think so. A satisfactory explanation as to the difference in the vote at the two elections just referred to is that the latter election, because of its national significance, brought out a much larger vote than the first one; that is, at the election of 1900, because it was a "presidential year," the total voting population, approximately, exercised the right of franchise, while in the year 1890 many voters stayed at home and failed to vote. We have been cited to the ratio of voters to the population in several of the states immediately surrounding us, as proof that the ratio between the voting population and the total population should be greater than it appears to be between the census returns and the votes cast in 1900. Taking this comparison for what it is worth, we find that in Kansas and South Dakota, states just south and north of us, where conditions affecting the question under consideration may be said to be somewhat similar, the ratio is 1 to 4.16 in one state and 1 to 4.18 in the other. Assuming this as a fairly correct basis for ascertaining the true total population from the vote cast, and estimating that Valley county has one voter to every 4.20 of its population, which is as liberal a view as respondent can fairly ask us to take, and

then the total population would fall short of the required 8,000. The school-census returns, compared with total population as shown by the general census reports, confirm the correctness of the latter, and tend to confirm one's judgment in their being as nearly correct as could be expected, regarding information for the purpose of determining the population of a county or state. The referee's findings on questions of fact have the force and effect of a verdict of a jury, and will be confirmed when supported by sufficient evidence. The burden was upon the respondent to show that he was entitled to the office from which he is by these proceedings sought to be ousted. This, we think, he has failed to do, and are of the opinion that the evidence not only warrants, but requires, the finding of fact made by the referee regarding the total population of Valley county. While the population, it is manifest, was very near the required 8,000 at the time of the election of respondent, there is no satisfactory, convincing evidence that it, at the time stated,—which must determine this controversy,—had reached that number. The exceptions to the referee's report are therefore overruled, and the report is confirmed.

We have thought it hardly necessary to discuss the validity of sections 8a and 8b of chapter 26 of the Compiled Statutes of Nebraska, 1901, as the unconstitutionality of their enactment is practically conceded by respondent, and no argument is presented in support of the regularity of the proceedings, and compliance with constitutional requirements at the time the statute was sought to be enacted by the legislature. The act of the legislature by which the legislation was attempted proved abortive, by reason of the act failing to receive a constitutional majority of votes in the house of representatives when placed upon its final passage; it receiving but forty-eight votes in the affirmative, when it must have received fifty-one before it could become a valid law. By some mistake or wrongful act, it was enrolled, attested by the proper officers of the legislature, presented to and approved by the gover-

nor, and incorporated in the statutes as though it were regularly passed through both branches of the legislature.

Judgment will be entered in this court in conformity with the prayer of the information.

JUDGMENT ACCORDINGLY.