## In re Estate of John Manning.

## Thomas Bonacum, Bishop, Appellant, v. John Manning, Jr., et al., Appellees.

### Filed September 25, 1909. No. 15,497.

1. **Wills: Construction.** A provision in the will of a testator who died prior to the enactment of chapter 49, laws 1907 (Ann. St. 1907, sec. 4901 *et seq.*), that his widow should "have her dower right in all property real and personal of which I die possessed," construed to mean that she had a right to the net income during her natural life from one-third of his estate.

2. ———: ———: **Power of Sale.** If a reasonable construction of a will clearly establishes that an executor is charged with the duty of dividing the testator's estate and to do so will necessitate a sale of real property, a power is thereby given the executor to sell and convey said realty.

3. **Executors and Administrators: Powers.** In such a case, if the executor fails to qualify, or, after qualification, resigns his trust, and the will does not indicate that the testator reposed a special confidence in the executor, a power to sell and convey real estate will pass to, and vest in, any qualified administrator with the will annexed appointed by the court to administer said estate.

4. **Homestead: Abandonment: Conveyance.** "Neither the husband nor the wife can abandon the family homestead and thereafter sell and convey the same to another to the exclusion of the homestead right of an insane spouse." *Weatherington v. Smith*, 77 Neb. 369.

5. **Executors and Administrators: Allowance to Widow.** "The widow of a testator is entitled, under subdivision 1, sec. 176, ch. 23, Comp. St. 1905, to the chattels therein specified, and also to $200 in cash from her husband's estate, and said property is not assets in the hands of the executor." *In re Estate of Fletcher*, 83 Neb. 156.

6. **Wills: Election.** Prior to the enactment of chapter 49, laws 1907, the widow of a testator did not have the right by electing to take under the law, and not under the will of her deceased spouse, to inherit his personal property as though he had died intestate.

7. **Executors and Administrators: Allowance to Widow.** If the widow during the time her deceased husband's estate is in process of administration is in the custody of the state in a hospital for the insane, and maintained by it without cost to her or his estate, it is within the discretion of the county court not to allow her anything for support during that period.

8. **Insane Persons: Guardian ad Litem.** It is the duty of a guardian *ad litem* of an insane defendant to submit to the court for its consideration every relevant fact involving the rights of his ward; but, if the guardian errs, it is the duty of the court to protect the rights of the incompetent, regardless of the conduct of the guardian.

Rehearing of case reported in 83 Neb. 417. *Judgment of district court reversed.*

Root, J.

An opinion written by Judge Fawcett in this case may be found in 83 Neb. 417. Upon motion for a rehearing and a diminution of the record it appears that the cause originated in the county court upon application for an order distributing the estate of the deceased, and that an appeal was perfected to the district court from the order made in response thereto. The cause comes here upon the appeal of the bishop of Lincoln from the order of distribution made by the district court.

1. The evidence establishes that about 1871, the testator, by the exercise of a homestead or pre-emption right, acquired title to a quarter section of land within the present boundaries of Furnas county, and thereafter resided thereon with his wife as their home. In 1885 she was adjudged a proper person to receive treatment in a hospital for the insane, and was incarcerated, and ever since has remained in one of said institutions. Subsequently the husband sold and conveyed the farm, and became the owner of lots 9, 10, 11 and 12, in block 16, in the village of Arapahoe, and until his death resided thereon as his home, part of the time with a daughter and grandson. Manning, the testator, owned no other real estate at the time of his death, which occurred in June, 1902. In 1899 Manning made his last will and testament, containing the following provisions:

"Item I. Whereas my beloved wife, Ellen Manning, is at present time an inmate of the hospital for the insane

at Hastings, Nebraska, and has been pronounced incurable by competent medical authority; now therefore should it happen contrary to all expectation that the said Ellen Manning, my beloved wife, would be restored to her right reason, it is my will that she have her dower right in all property, real and personal, of which I die possessed.

"Item II. I hereby constitute and appoint Andrew Meyerle, of Gosper county, and state of Nebraska, the sole executor of this my last will and testament. He shall pay all my just debts, if I have any, as also the expenses of my last sickness and of my funeral.

"Item III. It is my will that the afore-mentioned Andrew Meyerle shall after my death take possession of all property of which I may die possessed real and personal wherever found and that he divide the said property into three equal parts. One part whereof I give and bequeath to the Rt. Rev. Thomas Bonacum, Bishop of Lincoln, Nebraska, and to his successors in office in trust in order to enable the said Rt. Rev. Thomas Bonacum and his successors in office to erect and maintain a Roman Catholic Orphanage at such a place in the state of Nebraska as the said Rt. Rev. Thomas Bonacum or his successors in office may determine.

"In consideration of the bequest herein made to the Rt. Rev. Thomas Bonacum and his successors in office and acting on his suggestion it is my will that a mass of requiem shall be said annually for all time for the repose of my soul, and the soul of my beloved wife, Ellen Manning, on the anniversary of our respective deaths, and acting further on the suggestion of the aforesaid Rt. Rev. Thomas Bonacum, Bishop of Lincoln, it is my wish that a memorial tablet be set or erected in the said orphanage to commemorate my benefaction. And the remaining two parts of my estate I give and bequeath to my children, John Manning, Margaret Manning, Frederick Manning and William Manning to be equally divided among them, share and share alike."

After considerable litigation, the appointment of a special administrator, and several administrators with the will annexed, the will was established and the estate settled. In 1904, upon the application of an administrator with the will annexed, a license was issued by the judge of the district court, and said lots 10, 11 and 12 were sold for $580. There was no necessity for said sale to secure money to pay claims allowed against the estate or the costs of administration. The will, however, plainly directs the executor to divide all of the estate, real and personal, among five, and possibly six, devisees in such proportions as to make it imperative that the lots be sold and their proceeds divided, and therefore a license from the district court was not necessary to vest the executor with a power already created by the will. *Chick v. Ives,* 2 Neb. (Unof.) 879. There being nothing in the will to suggest a special confidence in the executor, the power to sell and convey vested in the successive administrators with the will annexed. *Schroeder v. Wilcox,* 39 Neb. 136. In the county court the guardian *ad litem* for the insane widow purported to elect for his ward to reject the provisions of the will, and that she take under the law.

2. We have not been favored with a brief by counsel for the widow or children, but an oral argument in their behalf was made at the bar. The will is reasonably plain. It first provides that, should the widow regain her reason, she should "have her dower right in all property real and personal of which I die possessed." While a dower estate in personal property, money or choses in action is not recognized by the law, it is easy to understand that the testator desired his wife to have the use during her natural life of one-third of his estate, provided she should become sane. The intention of the testator being manifest, it is the duty of the courts to carry that intention into effect notwithstanding the improper use of technical words. Until the wife becomes sane or departs this life, one-third of the estate in question, after the payment of claims, the widow's allowance and the costs of administration, should be held

intact, in trust by some person, to the end that, should she cease to be demented, she shall enjoy the net income from said funds during her natural life. Two-thirds of said estate should be divided as follows: One-third part thereof to Right Reverend Thomas Bonacum, Bishop of Lincoln, Nebraska, or to his successors in office, in trust for the benefit of the orphanage referred to in the will, and two-thirds thereof in equal shares among the four children named in said will, or to the children by right of representation of those devisees who may depart this life before said division is made; the fund set apart for the widow and all unpaid increment thereof upon her death to be divided among the children and the bishop of Lincoln in trust in the same proportions as the two-thirds of the estate were distributed.

3. The learned trial judge found that the Arapahoe lots constituted the testator's homestead at the time of his death. If this were true, the will would only act upon the remainder, subject to the widow's life estate in two of said lots. Ann. St. 1907, sec. 6291. The license of the judge of the district court would not authorize a sale of the homestead. *Tindall v. Peterson*, 71 Neb. 160. The persons claiming title through John Manning to the Furnas county farm, heretofore referred to, are not before us, and we do not assume to say that they may not be in position to successfully defend their title to that property. We must, however, determine the homestead feature of this case upon the record before us, and hold, so far as the parties hereto are concerned, that this feature of the instant case is ruled by *Weatherington v. Smith*, 77 Neb. 369, wherein we held that "neither the husband nor the wife can abandon the family homestead and thereafter sell and convey the same to another to the exclusion of the homestead right of an insane spouse." If the homestead estate of an insane husband cannot be deraigned by the sane wife's abandonment of it and her subsequent execution of a deed purporting to convey it, for much stronger reasons the sole deed of the husband, made before he had departed from the home,

will not convey the homestead interest of the insane wife. The court therefore should have ignored all claim of a homestead interest, made on behalf of the widow, in the village lots, which sold for less than $600. .

4. The guardian *ad litem* assumed to elect for the widow that she would take under the law, and not according to the will; and, while there is no separate affirmative entry of either court approving that election, the trend of the orders made indicates an approval of the guardian's action. In this we think there was error prejudicial to the property rights of the widow. The statute in force at the time John Manning died gave a widow the right to elect whether she would accept the provisions of her husband's will or recover dower in his lands, but did not vest her with the right to ignore the will and inherit his personal property as though he had died intestate. In the instant case the will preserved the widow's dower estate in the testator's lands and devised her the use during her natural life of one-third of his personal property, provided she recovered her reason. If she remained incompetent, it would be of but little moment to her whether she had the use of one-third part of the four lots, aggregating but little over $500 in value, or the use of all of said real estate. It was therefore to the widow's interest to take under the will, and not the law. It is the duty of a guardian *ad litem* to submit to the court all relevant defenses or legal claims his client may have, but courts will protect the rights of incompetents before them whether the guardian has proceeded wisely or not. *Andrews, Adm'r, v. Hall,* 15 Ala. 85; *Stark v. Brown,* 101 Ill. 395. A due regard for the widow's rights impels us to ignore the attempted election of the guardian *ad litem.*

5. The court was right in assigning to the widow $200 out of the personal property of her husband. She should also have been awarded the wearing apparel and ornaments of the deceased and all of the household furniture. None of said property is an asset in the hands of the executor, but is the absolute property of the widow. *In re Es-*

*tate of Fletcher,* 83 Neb. 156. During the settlement of the
estate the widow was supported by the state without ex-
pense to the estate of either spouse, and therefore the
court did not abuse its discretion in refusing to make an
allowance for her support.

The judgment of the district court is therefore reversed
and the cause remanded for further proceedings.

                                                REVERSED.