IN RE ESTATE OF FRED W. THOMAS, DECEASED.
GENEVIEVE M. THOMAS, APPELLANT, v. SHIRLEY ANN
STERNHAGEN ET AL., APPELLEES.
134 N. W. 2d 237

Filed April 2, 1965.   No. 35872.

Fisher & Fisher, for appellant.

Gantz, Hein & Moran, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

McCOWN, J.

This case involves a widow's allowance, her homestead right, and the question of whether farm implements are "tools of the trade" for purposes of exemption to the widow.

The county court granted a widow's allowance of $200 per month; approved the widow's selection of a homestead of two 80-acre tracts out of a 760-acre ranch; and assigned to the widow all of the farm machinery and tools as exempt property. The district court determined that the widow was not entitled to any widow's allowance; that she was not entitled to select, as part of the homestead, an 80-acre tract which touched only on one corner the 80 acres on which the residence was located; and that for exemption purposes, the widow was entitled only to the specific items set out in subdivision (6) of section 25-1556, R. R. S. 1943. From this determination appeal has been taken to this court.

Fred W. Thomas died testate April 24, 1962. Genevieve M. Thomas was his widow. They were married December 21, 1956. Both had adult children from former marriages, but there were no children of this marriage. The will was executed prior to the marriage and the widow had duly elected to take under the statute and not under the will. Prior to the marriage, during the marriage, and at the time of the death of her husband, the widow taught school. At the time of decedent's death, she was receiving a net salary of $328 per month. She owned individually land from which she received gross income of approximately $1,800 per year. Taxes on this land were $160 to $170 and there were some other expenses. There was a mortgage on this land of approximately $2,300 payable in annual installments of approximately $210.

The appraised value of the 760-acre ranch in the decedent's estate was $55,150. This was subject to a mortgage of $7,140. The personal property of the decedent was appraised at $5,475. Total claims filed in the estate totaled $981.82. The widow and Fred W. Thomas also had approximately $15,000 of jointly held personal property.

The decedent, Fred W. Thomas, paid all of the expenses of the household prior to his death and furnished all necessities except clothing. Prior to his death, the decedent had spent $200 to $250 per month for these living costs.

The issues in the district court were specifically limited to three: (1) Is Genevieve Thomas entitled to a widow's allowance and if so, in what amount and for what period of time? (2) Is she entitled to the homestead she selected, or if not, from what real estate is she entitled to select? (3) What specific personal property is she entitled to under section 30-103, R. R. S. 1943?

Subdivision (2) of section 30-103, R. R. S. 1943, provides: "* * * after giving such notice as the judge may require, the surviving spouse and children, if there be

children, constituting the family of the deceased, shall have such reasonable allowance out of the personal estate, or out of the income of the real estate, as the county court shall judge necessary for their maintenance during the progress of the settlement of the estate, according to their circumstances, which shall not be longer than one year after granting administration, nor for any time after the personal estate shall be assigned to the surviving husband or wife; * * *."

It is the appellant's contention that the widow has a vested right to such an allowance and that only the amount is discretionary with the court, and that the fact that she has separate property and income of her own, and is gainfully employed, cannot be permitted to completely deprive her of any allowance. Although this statute has remained virtually unchanged since 1907, there are no Nebraska cases directly in point. The right to a "widow's allowance" or a "family allowance" out of the estate of a decedent is of purely statutory origin. Such an allowance is usually an absolute provision to which a widow is entitled in her own right and is independent of any dower or other distributive interest in the estate, being maintained primarily to provide comfort and support pending administration of the estate and as a substitute for the support furnished by decedent. 34 C. J. S., Executors and Administrators, § 323, p. 20.

Statutes providing for allowances or exemptions to surviving spouses or families of decedents are based on sound public policy and will generally be liberally construed for the purpose of effecting the objective intended. In re Estate of Leavitt, 85 Neb. 521, 124 N. W. 114.

The language "shall have" would normally indicate a mandatory interpretation. Our statute and the Wisconsin statute are virtually identical in language, except that the Wisconsin statute applied only to widows. The source of both statutes was the same. The interpretation of the Wisconsin court is, therefore, persuasive

on the matter. In In re Estate of Sullivan, 200 Wis. 590, 229 N. W. 65, the Wisconsin court passed on this specific question. It was argued that the widow received certain insurance money, and other resources, and that it would be equitable to deny her support. The judgment was reversed and the cause remanded with instructions to make an allowance. The court stated: "It is considered that the object and purpose of the statute is to substitute the estate of the husband for the deceased husband during the progress of the settlement of the estate so far as support of the family is concerned. What allowance should be made is to be determined under all the facts and circumstances. Ordinarily in the case of a solvent estate it would be such sum as would maintain the family in approximately the same degree of comfort in which they were maintained by the husband. Under the statute the widow is entitled to an allowance for her support during the progress of the settlement of the estate * * *."

The only case in Nebraska bearing on this issue is the case of In re Estate of Manning, 85 Neb. 60, 122 N. W. 711. In that case, the surviving widow had been insane and supported entirely by the state for 17 years prior to the death of her husband. This court held that it was not an abuse of discretion on the part of the county court to refuse to make an allowance for her support. While this case indicates that the requirement of an allowance is not mandatory in all cases, it establishes the fact that the basis of the allowance is to substitute the estate for the decedent so far as support is concerned. That this was also the intent of our Legislature is apparent from the fact that the statute since 1907 has applied to husbands as well as wives and by the 1951 change is now simply "surviving spouse."

Except in cases where it is established that the decedent has not furnished any support, the widow's allowance is a right which it is mandatory upon the court to recognize, even though the widow has property and

income of her own. The allowance is not intended to be limited to those in necessitous circumstances. Neither do we feel that the Legislature intended to penalize widows who are gainfully employed. Under all the circumstances in this case, an allowance of $200 per month is reasonable.

The decedent owned a 760-acre ranch composed of several tracts, used as one unit. The dwelling house and improvements were in the northwest corner of an 80-acre tract described as the north half of the northwest quarter of Section 11. Immediately to the north was the west half of Section 2. To the northwest was the southeast quarter of Section 3, which touched the 80-acre tract only at the corner. This was the corner nearest the dwelling house and improvements. To the east of the 80-acre tract was the northeast quarter of Section 11. The decedent did not own any land directly south or directly west of the 80 acres on which the dwelling house and improvements were situated. The widow selected, in addition to the 80 acres where the dwelling house was situated, the 80 acres immediately to the northwest. These two tracts would touch each other only at one corner, were it not for an east-west county road. The dwelling house and appurtenances are located very near this corner.

The appellees contend that the widow was not entitled, under the statutes, to select cornering tracts, and that each 80 acres should have at least one common boundary.

Section 40-101, R. R. S. 1943, defines a homestead as: "* * * consisting of the dwelling house in which the claimant resides, its appurtenances, and the land on which the same is situated, not exceeding one hundred and sixty acres of land, to be selected by the owner thereof, and not in any incorporated city or village, or instead thereof, at the option of the claimant, a quantity of contiguous land not exceeding two lots within any incorporated city or village, * * *." It is clear that the homestead was intended to consist of the residence

and the appurtenances, but this court has not previously been called upon to determine what is meant by the phrase "and the land on which the same is situated, not exceeding one hundred and sixty acres." It is very clear that this phrase does not grant a homestead of any 160 acres, nor any amount of land as such, unless it is land on which the dwelling house and appurtenances are situated. If there are two separate and noncontiguous tracts of land, on one of which the dwelling house and appurtenances are situated, only that tract is the homestead, no matter how much less than 160 acres it may contain. Even where the tracts are contiguous, unless the second tract is used in connection with the tract on which the dwelling is located, the second tract is not included. As to city lots, we have held that where there are two contiguous lots, on one of which the claimant lives with his family in an apartment house, and on the other of which there is a separate apartment house, only the lot on which the appartment house in which he lives is a homestead in the absence of affirmative evidence of a connection between the use of the two lots. First Trust Co. v. Bauer, 128 Neb. 725, 260 N. W. 194. The same basic rule should be applied outside incorporated cities or villages.

We have held that two tracts separated only by a public highway are contiguous where both tracts were used and operated as one farm. Davis v. Davis, 112 Neb. 178, 199 N. W. 113. This is the general rule. 26 Am. Jur., Homestead, § 36, p. 26.

We have also held that it does not matter that such tract is in a different section where the tracts were contiguous along their whole length and both used and cultivated, indiscriminately and together. Tindall v. Peterson, 71 Neb. 160, 98 N. W. 688.

The district court ruled that the widow could not select an additional 80 acres which touched only at a corner. The court's theory and that urged by the appellees was that if cornering alone was sufficient, there would be

nothing to prevent a selection of tracts of 20 or 40 acres, in "checkerboard" fashion, effectively covering a large area of the real estate and diminishing the value of the remainder. Apparently all the parties overlooked the fact that another tract contiguous to and having at least one common boundary with the 80-acre tract on which the dwelling was located would permit "stripping" in a fashion perhaps even more disruptive than the "checkerboarding" with which they were concerned. The possible abuse to which the district court's ruling was apparently directed was arbitrary exercise of selection. We agree that a homestead claimant will not be permitted to lay off or select the homestead in an arbitrary, capricious, or unreasonable shape, so as to occasion loss or damage. 40 C. J. S., Homesteads, § 63, p. 502. That situation is not involved in the case actually before us. The land on which the dwelling house is situated is a question of fact in each case. The specific problem with which we are concerned in this case is the question of "cornering." There are two views on the question. See, 26 Am. Jur., Homestead, § 37, p. 26; 40 C. J. S., Homesteads, § 64, p. 504; Annotation, 73 A. L. R. 142. We believe the better rule is that where two tracts of land corner with each other, they are contiguous, and, when used as one farm, may be selected as a homestead. See Oregon Mortgage Co. v. Dunbar, 87 Mont. 603, 289 P. 559, 73 A. L. R. 113.

Under the facts here, we hold that the widow had the right to select the 160 acres which she selected and that such homestead should be set aside to her.

The widow asserts that her husband was engaged in the business of agriculture at the time of his death and that all of the farm machinery and equipment is exempt to her under the provisions of subdivision (8) of section 25-1556, R. R. S. 1943, as tools and instruments used and kept for the purpose of carrying on his trade or business. Section 25-1556, R. R. S. 1943, sets out the applicable exemptions in part as follows: "No prop-

erty hereinafter mentioned shall be liable to attachment, execution or sale on any final process issued from any court in this state, against any person being a resident of this state and head of a family: * * * (6) One cow, three hogs, and all pigs under six months old, and if the debtor be at the time actually engaged in the business of agriculture, in addition to the above, one yoke of oxen, or a pair of horses, in lieu thereof; ten sheep, and the wool therefrom, either in the raw material or manufactured into yarn or cloth; the necessary food for the stock mentioned in this section, for the period of three months; one wagon, cart or dray, two plows and one drag; necessary gearing for the team herein exempted; and other farming implements not exceeding fifty dollars in value; (7) the provisions for the debtor and his family necessary for six months' support, either provided or growing, or both, and fuel necessary for six months; (8) the tools and instruments of any mechanic, miner or other person, used and kept for the purpose of carrying on his trade or business; * * *."

The above section may not be invoked to allow one in the business of agriculture to exempt all of his farm machinery. The exemption to one engaged in agriculture, while obviously archaic, has not been changed by the Legislature and is specific. The decision of this court in Miller v. Dixon, 176 Neb. 659, 127 N. W. 2d 203, is determinative. The widow is not entitled to claim all farm machinery under subdivision (8) as tools of the trade of one engaged in the business of agriculture. She may, however, claim the property described in subdivision (6) if there is any such property.

The judgment of the district court is affirmed in part, and in part reversed and the cause remanded with directions to enter judgment in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.