MATHEW E. PELZER, JR., APPELLANT, V. CITY OF
BELLEVUE ET AL., APPELLEES.

251 N. W. 2d 662

Filed March 16, 1977.   No. 40777.

D. L. Pelton, for appellant.

John E. Rice, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

This case involves the validity of a redistricting ordinance passed by the city council of Bellevue, Nebraska. The ordinance, No. 1150 as amended by ordinance No. 1165, changed the boundaries of the city's four voting districts, or wards, from what previously existed. The plaintiff, a citizen, voter, and taxpayer of the City of Bellevue challenged the validity of the redistricting by filing suit on December 3, 1975. The plaintiff contended that the redistricting ordinance violated the equal protection clause of the Fourteenth Amendment and that the city failed to comply with the provisions of section 5-108, R. R. S. 1943. The plaintiff also alleged gerrymandering, but this contention has been dropped on appeal. The plaintiff sought to enjoin the defendants, the City of Bellevue, its mayor, members of the city council, and the Sarpy County election commissioner, from conducting any municipal elections under the redistricting ordinance.

Trial was held on February 26, 1976. At the close of the plaintiff's evidence, the defendants moved to have the plaintiff's petition dismissed. In granting the defendants' motion and dismissing the plaintiff's petition, the District Court held as follows: That the constitutional requirement of one man, one vote required substantially equal population in political districts; that while section 5-108, R. R. S. 1943, requires the use of the most recent federal census to determine the apportionment of population, it is not the sole and only criteria which may be used; that the provision in section 5-108, R. R. S. 1943, "as determined by the most recent federal census" is di-

rectional and not mandatory, and other factors may be used to show population and population distribution; and that if the above-quoted language were mandatory, section 5-108, R. R. S. 1943, would be unconstitutional as in violation of the one man, one vote principle. The District Court also found: That plaintiff's evidence failed to show that the districts were so unequal in population as to be a violation of one man, one vote; and that plaintiff's evidence was not sufficient to overcome the presumption that the defendants acted in good faith in the apportionment of political districts in Bellevue. The plaintiff moved for a new trial, his motion was denied, and he now appeals. We reverse the judgment of the District Court and remand the cause for further proceedings in accordance with this opinion.

Section 5-108, R. R. S. 1943, the statutory provision which this dispute revolves about, as is relevant to this appeal, provides: "When any city, village, county, or school district elects members of any governing board of districts, *such districts shall be substantially equal in population, as determined by the most recent federal census.*" (Emphasis supplied.)

The record shows that the redistricting was prompted by the annexation of several areas to the City of Bellevue. The largest of these was an area known as Twin Ridge II, which had an estimated population of between 1,000 and 1,500.

At the time of the redistricting, the city had in its possession a 1974 special census. This special census showed the population of Bellevue to be 21,145. This census was protested by the city because it showed a slight decrease in the population of the city. Prior to redistricting, the city council appointed a committee to determine the population of the City of Bellevue, and to draft various redistricting plans. This committee determined the population of the city in 1975 to be 27,584. This was approximately 5,500 per-

sons more than the 1972 revision of the 1970 census, also in the city's possession at the time, which showed a population of 21,953, and about 6,500 persons more than shown in the 1974 special census.

The city council committee, which proposed the redistricting plan adopted by the city, used the 1970 census, portions of the 1972 revision, and an estimate obtained from counting building permits issued since 1970. The city administrator multiplied the number of building permits by a factor of 3.81, a figure representing the average number of persons per household obtained from the metropolitan area planning association. A city directory was also consulted. The city administrator testified that he did not know whether structures for which building permits were issued were in fact constructed or completed, or that there was even a structure on the location, or whether the premises were occupied. He testified that he had no idea whether a particular apartment complex counted was fully occupied, or what the percentage of occupancy was. He merely took the number of units and multiplied it by 3.81.

From the record, it is clear that, in determining the population of the city, for the purpose of redistricting, the 1974 special census, available to the city, was not used.

Initially, we note that there is no question about the applicability of section 5-108, R. R. S. 1943, to the facts of this case. The division of the City of Bellevue into election districts or wards, for the election of members to its city council, is precisely the situation the statute was designed for.

The question presented in this appeal is whether section 5-108, R. R. S. 1943, is mandatory, in that the substantial equality of political districts must be "determined by the most recent federal census," or whether it is directory, allowing localities the use of other factors and figures when determining the substantial equality of political districts. Section 5-108,

R. R. S. 1943, does not directly compel the use of a federal census when drawing up political districts. However, if section 5-108, R. R. S. 1943, is mandatory, and requires that the substantial equality of political districts be ascertained solely by the most recent federal census, then for all practical purposes it compels the use of federal census figures when drawing up political districts.

"The court in considering the meaning of a statute should if possible discover the legislative intent from the language of the act and give it effect.

"If the language of the statute is clear and unambiguous, courts will not by interpretation or construction usurp the function of the lawmaking body and give it a meaning not intended or expressed by the legislature." Ludwig v. Board of County Commissioners, 170 Neb. 600, 103 N. W. 2d 838 (1960).

The predecessor of the current section 5-108, R. R. S. 1943, was L. B. 368, section 1, enacted in 1971. That law provided that any city, village, county, or school district which elected members to any governing board would be required to redistrict by January 1, 1972. If such body did not redistrict, then candidates were to be elected at large thereafter, until such time as redistricting was accomplished. Senator Terry Carpenter, the introducer of the bill, stated the purpose behind this law thusly: "LB 368 has as its purpose putting into operation the United States Supreme Court decisions relating to one man, one vote. This applies to all local subdivisions of government and unless the areas involved are redistricted, as provided in the bill, all people seeking election from that time on will be required to run at-large, rather than by district." L. B. 368, Introducer's Statement of Purpose, 1971 Nebraska Legislature.

In 1973, section 5-108, R. S. Supp., 1972, was amended by L. B. 549, section 1, to assume its present form. L. B. 549 was one of several bills

drafted by the Secretary of State's office. Hearings on these bills were held on April 12, 1973, before the Government and Military Affairs Committee of the Legislature. The general thrust of the testimony at the hearing on that date was that these bills were technical bills, designed to put into effect various United States Supreme Court decisions. Senator Chambers, Chairman of the Government and Military Affairs Committee, explained the provisions of L. B. 549, to his colleagues thusly: "* * * this bill relates to one which was passed last session which stated that any governing board which elects * * * by the district method which does not reapportion itself according to census figures and changes in population, would go from an, a district to an at-large basis and it would provide that this method could be retained if the people voted to keep it this way and it would also allow it to go from district to at-large or at-large to district if the people petition to do so." Floor Debate, 1973 Nebraska Legislature, pp. 3462-3463 (remarks by Senator Chambers).

The legislative history of section 5-108, R. R. S. 1943, indicates that the Legislature was concerned with complying with the decisions of the United States Supreme Court on one man, one vote; and that section 5-108, R. R. S. 1943, was designed to implement these decisions as a matter of state law.

"As a general rule, in the construction of statutes, the word 'shall' is considered as mandatory and it is particularly so considered when the statute is addressed to public officials." State ex rel. Smith v. Nebraska Liquor Control Commission, 152 Neb. 676, 42 N. W. 2d 297 (1950). See, also, Trobough v. State, 120 Neb. 453, 233 N. W. 452 (1930). Generally, the word "shall" appearing in a statute implies that whatever "shall" be done is mandatory. Minden Beef Co. v. Cost of Living Council, 362 F. Supp. 298 (D. C. Neb., 1973). See, also, Thomas v. Sternhagen, 178 Neb. 578, 134 N. W. 2d 237 (1965).

We hold that section 5-108, R. R. S. 1943, is mandatory in its provisions, and not directory; that the substantial equality of political districts in the state must be ascertained by using the most recent federal census; and that local governments cannot disregard the most recent federal census when drawing up political districts and use instead another method or basis for apportionment, even though ostensibly rational.

In addition to the plain language of the statute, there are several compelling policy reasons to support this holding. First, the federal census is generally viewed as being a highly reliable source of information concerning population. See, generally, 14 Am. Jur. 2d, Census, § 10, pp. 768, 769; State ex rel. Blessing v. Davis, 66 Neb. 333, 92 N. W. 740 (1902). The federal census is conducted by the Bureau of the Census, whose primary concern is the accurate ascertainment of data. It is not influenced or swayed by local politics, prejudices, or notions concerning size and prosperity. Second, federal census figures provide an objective standard against which the average citizen and the courts can measure the equality of political districts.

We also hold that the language in section 5-108, R. R. S. 1943, "the most recent federal census," refers to the most recent federal census available to the particular locality, either the regular decennial one, or, as in this case, a "special census." See City of Bisbee v. Williams, 83 Ariz. 141, 317 P. 2d 567.

The defendants cite the case of Ludwig v. Board of County Commissioners, *supra,* to support their contention that factors other than the federal census may be used in apportionment. In answer, we need only point out that section 5-108, R. R. S. 1943, had not been enacted when Ludwig v. Board of County Commissioners, *supra,* was decided.

The judgment of the District Court is reversed and the cause is remanded for a new trial to determine

if, according to the most recent federal census, the election wards of Bellevue are substantially equal in population in accordance with the principle of one man, one vote.

REVERSED AND REMANDED.