MATHEW E. PELZER, JR., APPELLEE, V. CITY OF BELLEVUE, A MUNICIPAL CORPORATION, ET AL., APPELLANTS.

264 N. W. 2d 653

Filed April 5, 1978.   No. 41539.

John E. Rice, for appellants.

D. L. Pelton, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

McCOWN, J.

This is an action to challenge the validity of redistricting ordinances passed by the city council of Bellevue, Nebraska, upon the grounds that they violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and that the city failed to comply with the provisions of section 5-108, R. R. S. 1943.   On the initial trial in the District Court, the court sustained a motion to dis-

miss at the close of plaintiff's evidence. Upon appeal, this court determined that section 5-108, R. R. S. 1943, requires that the most recent federal census be used in determining whether election districts have substantially equal population, and remanded the cause to the District Court "for a new trial to determine if, according to the most recent federal census, the election wards of Bellevue are substantially equal in population in accordance with the principle of one man, one vote." See Pelzer v. City of Bellevue, 198 Neb. 19, 251 N. W. 2d 662.

Following retrial, the District Court determined that the 1974 special census was the most recent federal census; that election ward boundaries cannot be established solely by use of the 1974 census; that the population of the wards cannot be accurately determined on the basis of the 1974 special census; that there are substantial variations in population between the various election wards in the City of Bellevue as determined by the most recent federal census; and that an at-large election should be held. The court therefore declared the redistricting ordinances void and vacated and set aside the 1976 primary and general elections for city council. The court vacated the offices of the four city council members elected on November 2, 1976, and ordered a special "at large" election for those seats. The City of Bellevue has appealed.

The issue on the retrial here was whether, according to the 1974 special federal census, the four election ward districts of the City of Bellevue were substantially equal in population in accordance with the principle of one man, one vote. The 1974 special census showed the population of the City of Bellevue to be 21,145. A large housing development area was annexed to the City of Bellevue effective July 31, 1975, and the redistricting ordinances of October and November 1975, involved here, were enacted in an attempt to adjust and equalize the population of the

election districts of the city. The 1974 census was prior to the annexation and the population of the annexed area was included only as a part of a much larger area outside the city. The city took a census of the actual population of the annexed housing development which showed a population of 1,193. An expert witness also testified that the population of the annexed area was approximately 1,200. The District Court excluded the city's evidence because it was not derived from the 1974 special federal census. We hold that whenever an area is annexed to a city subsequent to the most recent federal census, the population of that area must be taken into account in any subsequent redistricting, in addition to the population of the city as determined by the federal census. The population of the City of Bellevue according to the most recent federal census was, therefore, 22,338 at the time of the enactment of the challenged ordinances. Absolute equality in population of the four election wards of the City of Bellevue would produce four election districts with a population of 5,584 persons each.

The 1974 special census was not made on a block by block basis but contained only total population figures in each of more than 30 separate census enumeration districts. Where boundary lines of voting districts and census enumeration districts are the same, the census figures may be directly applied. Where the boundary lines between voting districts differ from the boundary lines of census enumeration districts, the census figures cannot be applied directly, but must be applied indirectly by interpretation or supplemented by other evidence. There are three census enumeration districts of the 1974 special census which are affected.

The plaintiff divided the 1974 population of census enumeration districts 21 and 22 between ward 1 and ward 2 by determining the ratio of the 1970 census block counts on each side of the ward boundary line

and applying that same ratio to the 1974 count. The defendant made an actual house count of the houses on one side of the boundary line in each of the two districts and multiplied the number by the average number of persons per household established by planning and census officials, and divided the 1974 census population between wards 1 and 2 by that method.

The third census enumeration district involved was district 14 in which the boundary line between ward 4 and ward 2 cut off a small corner of the census enumeration district 14, placing almost all of district 14 in ward 2 while the small corner of the district was in ward 4. The plaintiff simply placed all 1,186 persons of census district 14 into ward 2, while the defendant used the same house count method and placed 95 persons in ward 4 and the remaining 1,091 in ward 2.

Under plaintiff's interpretation of the evidence, the population of the largest of the four wards was 388 persons above the mathematical ideal of 5,584 persons, or 6.95 percent above it, while the population of the smallest of the four wards was 320 persons, or 5.73 percent, below the ideal. On defendant's interpretation of the evidence, the largest ward had a population of 320.5 persons, or 5.70 percent, above the mathematical ideal, and the population of the smallest district was 225.5 persons, or 4.03 percent, below that ideal. Of the two remaining wards, both plaintiff's and defendant's evidence showed one of them to be 0.45 percent above the mathematical ideal. That ward is the one in which ward boundaries coincided in all respects with census enumeration boundaries. On the remaining ward, plaintiff's evidence showed the population to be 1.67 percent below the mathematical ideal, while defendant's evidence showed it to be 2.15 percent below the mathematical ideal. We believe the defendant's evidence provides a more accurate and logical application of the 1974 special federal census.

It is argued that the 1974 special census cannot be directly applied to determine the population of the election districts here; that only the 1974 federal census, without extrinsic evidence, can be considered; and, therefore, the redistricting ordinances are void. We disagree.

Where the most recent federal census does not contain detailed block by block information sufficient to determine the population of a specific portion of a census enumeration district, any material relevant evidence may be admitted to establish that population. For example, it was proper here to consider evidence showing how many of the 558 persons residing in census enumeration district 22, as shown by the 1974 census, lived in ward 2 and how many of such persons lived in ward 1. The boundary line between election ward 1 and election ward 2 was Washington Street, which bisects census enumeration district 22. The admission and consideration of such evidence complies with the statutory requirement that the population of the election districts be determined according to the 1974 federal census.

On the basis of the evidence in this record the population of the largest ward in the City of Bellevue was 5,905, and the population of the smallest ward in the City of Bellevue was 5,359. The total disparity between the largest and smallest wards was 9.73 percent of the mathematical ideal. A variance of 56 persons would alter those results by a full 1 percent.

Plaintiff's position is that a difference in population of approximately 500 persons between the largest and smallest election districts in the City of Bellevue constitutes a violation of the principle of one man, one vote.

Since Baker v. Carr, 369 U. S. 186, 82 S. Ct. 691, 7 L. Ed. 2d 663, the one man, one vote principle has been a justiciable issue under the Equal Protection Clause. Gray v. Sanders, 372 U. S. 368, 83 S. Ct. 801, 9 L. Ed. 2d 821, extended the concept of political

equality to all phases of state elections. In Reynolds v. Sims, 377 U. S. 533, 84 S. Ct. 1362, 12 L. Ed. 2d 506, the Supreme Court recognized that mathematical exactness or precision is hardly a workable constitutional requirement, and that the element of practicability must be considered. While the court rejected the idea that there is some fixed minimum deviation from equality that is permissible in every case, the court concluded that the facts of each case must be examined to determine whether the existing deviation is the product of proper state considerations. In Burns v. Richardson, 384 U. S. 73, 86 S. Ct. 1286, 16 L. Ed. 2d 376, the Supreme Court indicated that variations from a pure population standard might be justified, and that such state policy considerations as the integrity of political subdivisions, the maintenance of compactness, and contiguity in legislative districts, or the recognition of natural or historical boundary lines might be appropriately considered. The court, in Swann v. Adams, 385 U. S. 440, 87 S. Ct. 569, 17 L. Ed. 2d 501, quoted from Roman v. Sincock, 377 U. S. 695, 84 S. Ct. 1449, 12 L. Ed. 2d 620, noting that the Constitution permits "such minor deviations only as may occur in recognizing certain factors that are free from any taint of arbitrariness or discrimination."

In Kirkpatrick v. Preisler, 394 U. S. 526, 89 S. Ct. 1225, 22 L. Ed. 2d 519, the court recognized that while fixed numerical standards which excuse population variances could not be set without regard to the circumstances of each particular case, the extent to which equality may practicably be achieved may differ from state to state and from district to district. The court determined that the "as nearly as possible" standard requires that the state make a good faith effort to achieve mathematical equality.

The principle of one man, one vote is, of course applicable to local governmental bodies as well as to

state legislatures. See Avery v. Midland County, 390 U. S. 474, 88 S. Ct. 1114, 20 L. Ed. 2d 45.

In Abate v. Mundt, 403 U. S. 182, 91 S. Ct. 1904, 29 L. Ed. 2d 399, the court noted that because of the smaller size of local population and legislative bodies, slightly greater percentage deviations from population equality may be tolerable for local government apportionment plans than for congressional or state plans. In that case the court upheld a total range of deviation of 11.9 percent from the mean district population.

In Mahan v. Howell, 410 U. S. 315, 93 S. Ct. 979, 35 L. Ed. 2d 320, the Supreme Court upheld a state legislative apportionment plan which involved a total deviation range from the mathematical ideal of 16 percent and said: "Neither courts nor legislatures are furnished any specialized calipers that enable them to extract from the general language of the Equal Protection Clause of the Fourteenth Amendment the mathematical formula that establishes what range of percentage deviation is permissible, and what is not."

In 1973, in two cases involving state legislative districts in which the deviation percentages were 7.83 percent and 9.9 percent, the Supreme Court determined that plaintiffs had failed to make a prima facie case of constitutional violation, and that no rational state interest need be shown. See, Gaffney v. Cummings, 412 U. S. 735, 93 S. Ct. 2321, 37 L. Ed. 2d 298; White v. Regester, 412 U. S. 755, 93 S. Ct. 2332, 37 L. Ed. 2d 314. In the Gaffney case the Supreme Court noted particularly that census figures reflected population at only a single instant in time and were constantly changing and that "it makes little sense to conclude from relatively minor 'census population' variations among legislative districts that any person's vote is being substantially diluted." The court noted that the work of state or local government in carrying out the task of reap-

portionment should not be invalidated under the Equal Protection Clause when only minor population variations among districts are proved.

In this case the evidence is virtually undisputed that the City of Bellevue made a good faith effort to reapportion the voting districts of the City of Bellevue to make them substantially equal in population. The evidence is also uncontradicted that the city, in preparing the apportionment plan here, sought to keep neighborhoods together, group major streets, move as few people as possible from one district to another, and change existing district lines as little as possible. All of these are legitimate considerations in carrying out a rational governmental policy of apportionment. The fact that a legislative body in adopting a reapportionment plan used an incorrect census, or an incorrect total population figure, does not invalidate the reapportionment if the districts created by the reapportionment are substantially equal in population as determined by the correct standards. Mathematical precision and exactness are impossible as a practical matter, and can be approached only within flexible limits. In a rapidly growing community such as Bellevue, even a satisfactory present solution may be fleeting.

The evidence here is convincing that the challenged ordinances established districts which were substantially equal in population as determined by the most recent federal census, and were in accordance with the requirements of section 5-108, R. R. S. 1943. On the evidence here the plaintiff has failed to make out a prima facie case of invidious discrimination under the Fourteenth Amendment. The challenged ordinances are legal, valid, and effective. The judgment of the District Court is reversed and the cause remanded to the District Court with instructions to dismiss plaintiff's petition.

REVERSED AND REMANDED WITH DIRECTIONS.