REQUESTED BY: Dear Senator Schmit:
In your letter of February 11, 1980, you enclosed for our review a copy of LB 889, which you described as a bill `. . . designed to remedy the problems created to the Nebraska Commercial Fertilizer and Soil Conditioner Act as a result of the case PPG Industries Canada v. Kreuscher.' Your question was then set forth as follows:
 "We would also like to know if it [LB 889] will require an out-of-state manufacturer of raw products to register in Nebraska. If so, does this violate any of the provisions of the federal constitution?"
We assume, by your use of the term `out-of-state manufacturer,' you are referring to such companies as the producers and marketers of potash and phosphates as were involved in the Nebraska Supreme Court cases of PPG IndustriesCanada Ltd. v. Kreuscher, 204 Neb. 220,281 N.W.2d 762 (1979); Amax Chemical Corp. v. Kreduscher, 204 Neb. 235,281 N.W.2d 771 (1979); Ideal Basic Industries, Inc. v.Kreuscher, 204 Neb. 237, 281 N.W.2d 772 (1979); andTexasgulf, Inc. v. Kreuscher, 204 Neb. 236, 281 N.W.2d 771
(1979).
As you know, our office represented the former Nebraska Director of Agriculture in both the above referenced appeals to the state Supreme Court, as well as the lower court trials conducted before the District Court of Lancaster County, Nebraska. Because the lower court memorandum and order addresses one of the questions you have raised, we have enclosed a copy of the district court's opinion for your review.
Turning first to your question of whether an out-of-state manufacturer of raw products would be required to register under the provisions of LB 889, we first note that neither the current law, set forth at Neb.Rev.Stat. §§81-2,162.01, et seq. (Reissue, 1976) [as amended, in part, at Neb.Rev.Stat. §§ 81-2,162.02, et seq. (Cum.Supp. 1978)], nor the provisions of LB 889 places product registration requirements on `manufacturers of raw products.' Rather, the product registration provisions set forth at section81-2,162.03 of both the current law, as well as the proposed legislation, speaks in terms of `distributors' of commercial fertilizers.
The present law, at section 81-2,162.03(1) provides as follows:
 "Each commercial fertilizer and soil conditioner shall be registered before being distributed in this state. . . ."
Under LB 889, the above referenced provision is immediately followed by this sentence:
 "The distributor who first causes the distribution of the product into or within this state shall be responsible for compliance with the product registration requirements of this section."
As noted by both the Lancaster County District Court and the Nebraska Supreme Court, it is therefore necessary to turn to the legislative definitions of `commercial fertilizer' and `distribute' to understand what products should be registered and by whom.
Under the present law, the term `commercial fertilizer' is defined, at subsection (3) of section 81-2,162.02, as follows:
 "Commercial fertilizer shall mean any formula or product distributed, . . . which contains one or more plant nutrients . . . which nutrients are used for their plant nutrient content and are intended to promote plant growth;"
While the district court found that this definition included such products as potash, which is commonly blended with other nutrients to form a `custom blend,' the Nebraska Supreme Court interpreted the intent of the Legislature to regulate only `finished products' and not merely raw material ingredients, such as potash. PPG, supra, 204, Neb. at 230.
The proposed legislation, LB 889, adds the following sentence to subsection (3) of section 81-2,162.02:
 "The term commercial fertilizer shall not be deemed to include unmanipulated animal and vegetable manures, but shall be deemed to include both finished products and fertilizer ingredients capable of being used in the formulation of a finished product." (Emphasis added.)
The term `distribute' has not been redefined by the proposed legislation. It is defined at section81-2,162.02(6) as follows:
 "Distribute shall mean to offer for sale, sell, barter, or otherwise supply commercial fertilizers or soil conditioners;"
Consequently, this definition, as both the district court and the Nebraska Supreme Court recognized, refers back to the definition of commercial fertilizer.
As we noted above, neither the current law nor the proposed bill identifies the `manufacturer' as the proper party to register the commercial fertilizer, but rather looks to the initial `distributor' for purposes of product registration. Therefore, if the out-of-state manufacturer also markets such products as potash and phosphoric acid in Nebraska, and supplies the same to fertilizer dealers in the state, it would appear that this party, the manufacturer and initial distributor, would be responsible for the product registration requirements of section 81-2,162.03.
Under Section 7 of LB 889, the proposed legislation also amends section 81-2,162.23 of the existing law to require that an out-of-state manufacturer and distributor must register `. . . his or her principal out-of-state office.' This amendment, as the legislative history of LB 889 indicates, also appears to be in response to the opinion of the Nebraska Supreme Court which indicated that the court had some difficulty in interpreting the present provisions of section 81-2,162.23, Neb.Rev.Stat. (Reissue, 1976). PPG,supra, 204 Neb. at 230.
We have examined the legislative history of LB 889, which indicates that the amendments were intended to require product and firm registration from out-of-state entities who market or distribute commercial fertilizers in Nebraska. In light of the rule that the statute should be interpreted to give effect to such legislative intent, we would advise you that the amendments appear to us to require an out-of-state manufacturer to register its product and its principal office when that manufacturer is also responsible for the initial distribution of the product into or within Nebraska.Pelzer v. City of Bellevue, 198 Neb. 19, 251 N.W.2d 662
(1977); Norden Laboratories, Inc. v. County Board ofEqualization, 189 Neb. 437, 203 N.W.2d 152 (1973).
The question we now must consider is whether such a requirement on an out-of-state distributor, engaged in the interstate commerce of commercial fertilizer products, may constitute an impermissible burden on interstate commerce in violation of the federal constitution.
We first note that the Nebraska Supreme Court has recognized that the Nebraska Commercial Fertilizer and Soil Conditioner Act was a consumer protection measure, intended to prevent consumers from being defrauded by manufacturers and distributors of such fertilizer products. PPG, supra,204 Neb. at 229. The amendments to LB 889, as we have previously noted, appear to clearly indicate a legislative determination that the consumer is to be protected by both the regulation of the finished product as well as the primary nutrient such as potash.
As the state district court cited, the case ofPatapseo Guano Co. v. North Carolina, 171 U.S. 345,43 L.Ed. 191, 18 S.Ct. 862 (1898), held that it is within the protective power of the state to provide for the regulation and inspection of products which may be injurious to the population of that state.
We are aware of no overriding federal regulation which would preempt the state from the registration of fertilizer products which are shipped in interstate commerce. In the absence of congressional legislation, there is a `residuum of power in the state to make laws governing matters of local concern which nevertheless in some measures affect interstate commerce or even, to some extent regulate.'Southern Pacific Co. v. State of Arizona, 325 U.S. 761,767, 89 L.Ed. 1915, 65 S.Ct. 1515 (1945). Accordingly, the test by which the validity of state legislation must be measured is set out in Pike v. Bruce Church, Inc.,397 U.S. 137, 142, 25 L.Ed.2d 174, 90 S.Ct. 844 (1970).
 "Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . ."
The burden upon commerce would appear to be the filing of two registration forms with the Nebraska Department of Agriculture, and the payment of a nominal fee to the state. In our judgment, this would not constitute an `excessive' burden upon interstate commerce. On the other hand, the guarantee to the state, and all of its citizens, of the precise ingredients and nutrient content of a particular fertilizer would seem to be an important consumer protection measure recognized as such by the Nebraska courts previously referenced. It should be noted that the state district court did not consider the burden upon interstate commerce excessive, even under the existing law, which was interpreted at that time to require both the product and firm registrations, as well as the payment of tonnage fees to the State Department of Agriculture. LB 889, in contrast, provides that the payment of tonnage fees be made by the local dealer selling directly to the ultimate user.
Consequently, consistent with the position we maintained in our previous representation of the Nebraska Department of Agriculture, and consistent also with the opinion of the state district court, which was the only court ruling on the constitutional question presented, we would advise you that the amendments to LB 889 which require, in some cases, registration by out-of-state distributors, do not appear to exceed the constitutional limitations we have discussed.