IN RE BOUNDARIES OF MCCOOK PUBLIC POWER
DISTRICT.
STANLEY NEEL ET AL., APPELLEES, v. MCCOOK PUBLIC
POWER DISTRICT, APPELLANT.
347 N.W.2d 554

Filed April 20, 1984. No. 83-052.

Stanley C. Goodwin of Colfer, Lyons, Wood, Malcom & Goodwin, for appellant.

Vernon Tweedie, for appellees.

Gene D. Watson and John C. McClure, for amicus curiae Nebraska Public Power District.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an appeal from an order of the Nebraska Power Review Board (PRB) which held McCook Public Power District (MPPD) in noncompliance with Chapter 70, article 6, of the Nebraska Revised Statutes for the reason that the city of McCook, Nebraska, is included within the charter area of MPPD. We affirm.

The parties stipulated to the following facts. MPPD is a lawfully constituted public power district which sells retail electricity. A portion of this sale of power is retail sales to six businesses and one residence located within the boundaries of the city of McCook. MPPD sells no wholesale power to McCook. MPPD owns business offices, storage facilities, inventory, and other assets with a value of over $2 million within the boundaries of McCook.

Since the inception of MPPD, the city of McCook has been within the charter area of MPPD; conse-

quently, all 5,134 resident registered voters of Mc-Cook are eligible to vote for MPPD's board of directors. There are 26,474 eligible voters in MPPD's entire charter area. Currently three of the nine members of the MPPD board of directors are residents of the city of McCook.

Pursuant to Neb. Rev. Stat. § 70-604.05 (Reissue 1981), the appellees, Stanley Neel and Lloyd Potthoff, filed a complaint with the PRB, alleging that because MPPD has ceased to sell at least 50 percent of the retail or wholesale power requirements of the city of McCook, that city cannot be included in MPPD's charter area. Appellees contend that the unlawful inclusion of the city of McCook in MPPD's charter area dilutes their votes and other votes of individuals similarly situated who are justly and lawfully qualified to vote for the board of directors of MPPD.

In its reply MPPD admitted to the status of the complainants, generally denied that it is in noncompliance, and further alleged that because MPPD does sell some retail electricity within the boundaries of McCook, that city is lawfully included in MPPD's charter.

After a hearing on the issue the PRB found MPPD in noncompliance with respect to the inclusion of the city of McCook for the purpose of the election of successors to the board of directors of MPPD. MPPD's motion for rehearing was denied, and they took timely appeal to this court.

The sole issue on appeal is whether the city of McCook is lawfully included in MPPD's charter area. Stated broadly, the issue becomes one of determining who has the right to vote in an election of the board of directors of a public power district. The Constitution of the State of Nebraska is silent on the issue; consequently, if such a privilege exists, it must of necessity be statutorily granted. A review of applicable provisions of Chapter 70, article 6, of

the Nebraska Revised Statutes provides us with the answer.

We begin by setting forth some of the well-established rules of statutory construction.

"Where, because a statute is ambiguous, it is necessary to construe it, the principal objective is to determine the legislative intention. . . . The legislative intention is to be determined from the general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent deduced from the whole will prevail over that of a particular part considered separately."

*In re Guardianship of Sain*, 211 Neb. 508, 511-12, 319 N.W.2d 100, 103 (1982).

It is a fundamental rule of statutory construction that, if possible, a court will try to avoid a construction which leads to absurd, unjust, or unconscionable results. A statute should be construed in the context of the mischief sought to be remedied and the purpose to be served. *State v. Farr*, 209 Neb. 163, 306 N.W.2d 854 (1981).

With these rules of construction in mind, we explore the relevant provisions of Chapter 70, article 6, of the Nebraska Revised Statutes in the order in which they appear.

Neb. Rev. Stat. § 70-601 (Reissue 1981) is the definitional section and will be referred to as needed.

Neb. Rev. Stat. § 70-602 (Reissue 1981) states in part:

A public power district may be composed of the territory of one or more municipalities as defined in subsection (2) of section 70-601, whether contiguous or otherwise, but no city, village, or voting precinct shall be divided in the formation of a public power district. Nothing in Chapter 70, article 6 shall be construed to prevent the organization of a district within, or partly within, the territorial boundaries of another district

organized hereunder, so long as the plants, systems, and works, the operation of the same, the exercise of powers, and the assumption of duties and responsibilities, of or on the part of one district, do not nullify, conflict with, or materially affect those of, or on the part of, another district.

Subsection (2) of § 70-601 defines municipality as follows:

Municipality, when used in relation to the organization of a public power district, shall mean any county, city, incorporated village, or voting precinct in this state; but when used in relation to the election of successors to the board of directors of a public power district, as provided in sections 70-610 to 70-618, municipality or municipalities, comprising such public power district, shall be deemed automatically to be extended so as to include each incorporated city or village to which the public power district shall furnish or sell electrical energy either at retail to the inhabitants of such city or village or at wholesale to the city or village to be resold by it if the sale at wholesale is for more than fifty per cent of the power requirements of the city or village. When the public power district ceases to sell electrical energy at retail to the inhabitants of the city or village, or at wholesale to the city or village, for more than fifty per cent of the power requirements, such city or village shall cease to be a part of the public power district.

Appellant contends that the 50-percent requirement of § 70-601(2) applies only to wholesale sales of electrical energy, and because MPPD sells retail electricity, even though admittedly a minute amount, within the city of McCook, that city is lawfully included in its charter area. Appellees contend that the 50-percent requirement applies to both retail and wholesale sales of electricity, and because MPPD does not supply McCook with at least 50 per-

cent of the city's retail or wholesale electrical energy requirements, MPPD cannot include the entire city of McCook within its charter area.

The first and second sentences of § 70-601(2) seem to be in conflict. A search of legislative history concerning the provision is not helpful in resolving the conflict. By taking into consideration the entire statutory scheme, however, it becomes evident that the 50-percent requirement applies to both retail and wholesale sales of electricity, and, as such, the entire city of McCook cannot lawfully be included in MPPD's charter area.

Neb. Rev. Stat. § 70-604.01 (Reissue 1981) further sets out the mandatory and permissible charter areas of a public power district. It states as follows:

> Except as the same may be further limited or expanded by requirements in Chapter 70, article 6, the chartered territory of each public power district or public power and irrigation district, organized pursuant to and existing by virtue of, or subject to the provisions of, Chapter 70, article 6, after creation of a district, must include the area in this state within which each district renders electric service of the nature defined in section 70-604.02 and termed its operating area. There may be included within the chartered area of each district areas which are outside the operating area as defined in this act, but which inclusion is nevertheless authorized by other sections of Chapter 70, article 6.

Operating area is defined in Neb. Rev. Stat. § 70-604.02 (Reissue 1981) as:

> [T]he geographical area in this state comprising:
>
> (1) The district's retail distribution area, which is that area within which the district delivers electricity by distribution lines directly to those of its customers who consume the electricity; and

(2) The district's wholesale distribution area, which is the aggregate of those retail distribution areas of the public electric utilities which purchase electricity from the district for resale either directly or indirectly to their retail customers if the selling district has the responsibility, in whole or in part, of charging for, and delivery of, the electricity, by transmission lines, to the retail public electric utility distribution lines at one or more points of delivery pursuant to a power contract to deliver firm power and energy and having a term of five years or more. To the extent that a selling district leases its plant or systems to another district to be operated by such other district, or produces electricity which other districts may purchase, and such other districts provide or operate the transmission lines to carry such electricity from the producer to such other districts, the retail and wholesale distribution areas of such other districts are not a part of the operating area of the selling district by reason alone of such leasing or production.

Recently, 1982 Neb. Laws, L.B. 198, amended § 70-604.03 to read in pertinent part as follows:

(1) To establish boundary lines of an operating area coincident with voting precinct or county boundary lines, it shall be permissible to eliminate from, or add to, the operating area relatively minor areas containing a limited number of retail customers served, so that retail distribution areas are identified by reference to whole voting precincts and wholesale distribution areas are identified by reference to whole counties.

(2) After the formation of a district, voting or election precincts may be divided, for the purposes of district elections, by amending the charter as prescribed in sections 70-662 to 70-665. A district may divide a voting or election pre-

cinct whenever either (a) an excessive number of ratepayers are excluded from voting, or (b) an excessive number of nonratepayers are allowed to vote. The description of such divided precincts may be given by township and range and section number and shall be subject to the approval of the Secretary of State.

(3)(a) Any retail customer whose principal residence is being served by a public power district and whose principal residence is not in the chartered territory of such district may request the district in writing prior to the certification date for such district, as such date is provided in section 70-611, for the right for each registered voter residing at such residence to vote for, and be eligible to hold office as a member of, the board of directors of such district. The secretary of the district shall cause notice to be given to each such retail customer which reasonably prescribes the manner in which the retail customer may request such right to vote. The notice shall be given by first-class mail and may be included as part of the regular billing statement mailed to a customer, if such billing statement is sent by first-class mail to such retail customer, which mail shall be conspicuously marked as to its importance. Such notice shall be given at least sixty days prior to the time the election certification and publication information is transmitted to the Secretary of State pursuant to section 70-611. The district shall certify to the Secretary of State the names of all such retail customers for whom such request to vote has been made along with identification of the voting or election precincts wherein such retail customers reside, and each such retail customer shall be a qualified elector and qualified to hold office as a member of the board of directors, if otherwise qualified to vote.

Neb. Rev. Stat. § 70-604.03 (Cum. Supp. 1982).

The legislative history of L.B. 198 provides the following:

The intent of LB 198 is to provide proportional and accurate representation of ratepayers of public power districts. The current version of section 70-604.03 is inadequate for assuring proper representation.

As the Public Works Committee's 1980 interim studies on LRs 307 and 308 revealed, there are occasional instances of significant divergence between who pays rates and who is allowed to vote for a public power district's board of directors. LB 198 introduced by the Government, Military and Veterans Affairs Committee, is permissive and will allow public power district boards of directors to split voting precincts in order to extend the right to vote to ratepayers and to exclude nonratepayers.

In order to avoid placing undue burdens on the counties, the public power districts will bear any additional election costs occasioned by the splitting of precincts.

Introducer's Statement of Purpose, Public Works Committee, L.B. 198, 87th Leg., 2d Sess. (Feb. 3, 1981).

In further reading the legislative history of L.B. 198, it is obvious that the Public Works Committee was acutely aware that some ratepayers of a public power district were not entitled to vote for the board of directors of the public power district which served them, while there were other people who did not receive service from that power district, yet voted for that district's board of directors. The situation of MPPD's including the city of McCook within its charter area was specifically mentioned.

The legislative intent is clearly to put control of a public power district in the ratepayers who receive their electricity from that district. Allowing MPPD to include the entire city of McCook within its charter area when MPPD services only two regis-

tered voters of McCook would and does indeed lead to an absurd result not intended by the Legislature.

As noted earlier, § 70-601(2) does not allow MPPD to include the entire city of McCook in its charter area. By dividing a voting or election precinct under the provisions of § 70-604.03, MPPD could, however, include those ratepayers receiving retail electricity from MPPD within the charter area. If MPPD chooses not to include those retail customers whose principal residences are being served by MPPD but whose residences are outside the charter area, those ratepayers may still vote and hold office as provided in § 70-604.03(3)(a).

Appellant next contends that because a significant amount of MPPD assets are located in McCook and because some of McCook's residents own oil wells powered by electricity, located outside the city of McCook but serviced by MPPD, the residents of McCook have a significant interest in the affairs of MPPD and should be allowed to vote for the board of directors. Again, we reiterate that the right to vote for a power district's board of directors is purely statutory. There being no statutory provision which allows a power district to include an area in its charter because the district owns assets in the area or because the residents have an "economic interest," the appellant's contentions must fail.

The Nebraska Power Review Board's order being correct, it is affirmed.

AFFIRMED.